**UNITED STATES of America,
Plaintiff,**

v.

**Angela JOHNSON, Defendant.**

**No. CR 01–3046–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Jan. 7, 2003.

Patrick J. Reinert, Charles J. Williams, Thomas Henry Miller, U.S. Attorney's Office, Cedar Rapids, IA, for U.S.

Alfred E. Willett, Terpstra, Epping & Willett, Cedar Rapids, IA, for defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DECLARE THE DEATH PENALTY PROVISIONS OF 21 U.S.C. § 848 UNCONSTITUTIONAL AND TO STRIKE THE GOVERNMENT'S NOTICE OF INTENT TO SEEK THE DEATH PENALTY**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I.   *BACKGROUND* ........................................................927
    A.   *The Original And Superseding Indictments* ............................927
    B.   *The Grand Jury's Additional "Findings" In This Case* ..................928
    C.   *The Notices Of Intent To Seek The Death Penalty* ......................929
    D.   *The Motion Challenging The Death Penalty Under 21 U.S.C. § 848* ........929

II.  *LEGAL ANALYSIS* ....................................................929
    A.   *Death Penalty Provisions Of § 848* ..................................930
        1.   *Death eligible offenses and sentencing hearing* ....................930
        2.   *Notice of intent to seek the death penalty* ........................930
        3.   *The separate sentencing hearing* .................................931
        4.   *Effect of aggravating factors* ....................................932
        5.   *Statutory mitigating and aggravating factors* ......................933
    B.   *Constitutionality Of § 848 Death Penalty Provisions* ..................934
        1.   *Arguments of the parties* ........................................934
        2.   *Analysis* .......................................................936
            a.   *Recent Supreme Court decisions* ............................936
            b.   *Constitutionality of the factfinder provisions of § 848* .............937
            c.   *Constitutionality under the Indictment Clause* .................938
    C.   *Challenge To The Government's "Fix"* ................................942
        1.   *Arguments of the parties* ........................................942
        2.   *Analysis* .......................................................943
    D.   *Challenge To Penalty Phase Procedures* ..............................944
        1.   *Arguments of the parties* ........................................944
        2.   *Analysis* .......................................................945

III. *CONCLUSION* ........................................................946

A plethora of pre-trial motions has confronted the court in two cases involving, primarily, the defendant's alleged involvement in the murders of five federal witnesses. Among those motions is the defendant's motion, in one of the cases, challenging the constitutionality of the death penalty provisions of 21 U.S.C. § 848 in the wake of the Supreme Court's decisions in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In essence, the defendant contends that the death penalty provisions of 21 U.S.C. § 848 are unconstitutional, because they treat "aggravating factors," which permit imposition of the death

penalty, as mere "sentencing factors," rather than as elements of capital offenses. She also contends that what she calls the "relaxed evidentiary standard" in the "penalty phase" of sentence determination under § 848 violates a defendant's due process, confrontation, and cross-examination rights. Finally, she contends that the government's attempts to overcome the unconstitutional aspects of the statute, by what she contends are novel procedures, are not permissible.

## I. BACKGROUND

### A. The Original And Superseding Indictments

In two separate indictments, a grand jury charges defendant Angela Johnson with a variety of charges arising, principally, from her alleged involvement in the murders in 1993 of five witnesses to the drug-trafficking activities of Johnson's sometime boyfriend, Dustin Honken. The grand jury handed down the first seven-count indictment on July 26, 2000, and the second ten-count indictment on August 30, 2001. On April 25, 2002, the government filed its original notice in each case of its intent to seek the death penalty on all of the charges relating to the murder of witnesses. Those notices identified the statutory aggravating factors that the government contends warrant the imposition of the death penalty under the applicable death penalty statutes.

On·August 23, 2002, the government filed superseding indictments in both cases against Johnson. The superseding indictment in the first case against her, Case No. CR 00–3034–MWB, reiterates and ex-

pands the seven counts of the original indictment. It charges the following offenses: five counts of aiding and abetting the murder of witnesses, in violation of 18 U.S.C. §§ 1512(a)(1)(A) and (C), 1512(a)(2)(A) or 1513(a)(1)(A) and (C),[1] 1111, and 2; one .count of aiding and abetting the solicitation of the murder of witnesses, in violation of 18 U.S.C. §§ 373(a)(1) and 2; and one count of conspiracy to interfere with witnesses, in violation of 18 U.S.C. § 371. The August 23, 2002, superseding indictment in this case, Case No. CR 01–3046–MWB, like the original indictment, charges Johnson with five counts of killing witnesses while engaging in a drug-trafficking conspiracy ("conspiracy murder"), in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; and five counts of killing the same witnesses in furtherance of a continuing criminal enterprise ("CCE murder"), in violation of 21 U.S.C. § 848(e)(1)(A)· and 18 U.S.C. § 2. The five murder victims identified in the second indictment are the same five murder victims identified in Counts 1 through 5 of the first indictment.

More specifically, **Counts 1** through **5** of the superseding indictment in this case charge that, on or about July 25, 1993, or in the case of Terry DeGeus, on or about November 5, 1993, while engaging in an offense punishable under 21 U.S.C. § 841(b)(1)(A) and 846, relating to a conspiracy to manufacture and distribute 100 grams or more of pure methamphetamine and 1000 grams or more of a mixture or substance containing a detectable amount of methamphetamine between 1992 and 2000, Angela Johnson intentionally killed

---

**1.** The court notes that there is no subdivision (C) to 18 U.S.C. § 1513(a)(1), nor does it appear that there ever has been. *See* 18 U.S.C.A. § 1513(a) & Historical and Statutory Notes. Notwithstanding this fact, Count 1 of the Superseding Indictment in this case,

which.alleges that Johnson aided and abetted the killing of Gregory Nicholson, alleges that the killing was, *inter alia,* "in violation of Title 18, United States Code, Sections ... 1513(a)(1)(A) & (C)...." Superseding Indictment, Count 1.

and counseled, commanded, induced, procured, and caused and aided and abetted the intentional killing of Gregory Nicholson, Lori Duncan (Nicholson's girlfriend), Amber Duncan and Kandi Duncan (Lori Duncan's daughters, age 6 and 10, respectively), and Terry DeGeus, respectively, and that such killings resulted, all in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. **Counts 6** through **10** of the superseding indictment charge that, on or about July 25, 1993, or in the case of Terry DeGeus, on or about November 5, 1993, while working in furtherance of a continuing criminal enterprise between 1992 and 2000 in violation of 21 U.S.C. § 848(c), Angela Johnson intentionally killed and counseled, commanded, induced, procured, and caused and aided and abetted the intentional killing of Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and Terry DeGeus, respectively, and that such killings resulted, all in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2.

### B. The Grand Jury's Additional "Findings" In This Case

Part of what was added to the superseding indictments in each case was additional "Findings," specifically referencing all counts carrying the death penalty, charging statutory culpability and aggravating factors that allegedly make Johnson eligible for the death penalty. The additional "Findings" in the superseding indictment in this case also warrant further statement here. Those additional "Findings" are as follows:

*Findings under 21 U.S.C. § 848(n)*

As to the offenses charged in Counts 1 through 10 of this Superseding Indictment, the Grand Jury finds the following:

1. At the time of the murders charged herein ANGELA JANE JOHNSON was 18 years of age or older;

2. **Threshold Culpability Factors under 21 U.S.C. § 848(n).**

A. The defendant intentionally killed Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and Terry DeGeus (21 U.S.C. § 848(n)(1)(A));

B. The defendant intentionally inflicted serious bodily harm upon [sic] which resulted in the deaths of Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and Terry DeGeus (21 U.S.C. § 848(n)(1)(B)); and

C. The defendant intentionally engaged in conduct intending that Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and Terry DeGeus be killed or that lethal force be employed against Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and Terry DeGeus, which resulted in the death of Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and Terry DeGeus (21 U.S.C. § 848(n)(1)(C)).

3. **Aggravating Factors Enumerated Under 21 U.S.C. § 848(n).**

A. The defendant committed each offense after substantial planning and premeditation (21 U.S.C. § 848(n)(8));

B. In Counts 3, 4, 8, and 9, the victims, Kandi Duncan (age 10) and Amber Duncan (age 6), were particularly vulnerable due to their youth (21 U.S.C. § 848(n)(9)); and

C. The defendant committed each offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to Gregory Nicholson, Lori

Duncan, Amber Duncan, Kandi Duncan, and Terry DeGeus (21 U.S.C. § 848(n)(12))[.]

Superseding Indictment, Findings Under 21 U.S.C. § 848(n).

### C. The Notices Of Intent To Seek The Death Penalty

As mentioned above, on April 25, 2002, prior to the filing of the superseding indictments, the government filed its original notice in each case of its intent to seek the death penalty on all of the charges relating to the murder of witnesses. On September 24, 2002, after the filing of the superseding indictments, the government filed a notice in Case No. CR 00–3034–MWB withdrawing its notice of intent to seek the death penalty for violations of the witness-tampering statute, 18 U.S.C. § 1512. However, the government reiterated its intention to continue pursuing the death penalty in the present case as to the "conspiracy murder" and "CCE murder" charges pursuant to 21 U.S.C. § 848.

Indeed, thereafter, on November 14, 2002, the government filed in this case a Second Notice Of Intent To Seek The Death Penalty Under Title 21 United States Code, Section 848. That Second Notice reiterated the government's intent that, "in the event of the defendant's conviction of one or more of the intentional killings of Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and/or Terry DeGeus, as charged in Counts 1 through 10 of the Superceding Indictment, the government will seek the sentence of death." Second Notice, 1. The Second Notice then provides, for the pair of counts alleging the murder of each of the witnesses, notice that the government will seek to prove certain specific statutory aggravating factors enumerated in 21 U.S.C. § 848(n)(1) and 21 U.S.C. § 848(n)(2) through (12), as well as "Other Non–Statutory, Aggravating Factors Identified under 21 U.S.C. §§ 848(h)(1)(B) and 848(k)." The statutory aggravating factors in the Second Notice are essentially the same as those reflected in the grand jury's "Findings" in the superseding indictment.

### D. The Motion Challenging The Death Penalty Under 21 U.S.C. § 848

On September 30, 2002, after the government filed the superseding indictment in each case, but prior to the filing of the government's Second Notice in this case, Johnson filed her Motion to Declare the Death Penalty Provisions of 21 U.S.C. § 848 Unconstitutional and to Strike the Government's Notice of Intent to Seek the Death Penalty. After extensions of time to do so, the government resisted Johnson's motion on November 12, 2002. Both parties acknowledged that, in their briefing of the motion in this case, they are indebted to parties litigating similar motions in other cases. Johnson's challenge to the death penalty provisions of § 848 in this case is now ready for decision.

At the time Johnson's motion was filed, trial on both indictments was scheduled to begin on March 10, 2003. However, the court has now continued the trial indefinitely, in light of pending interlocutory appeals on some of the court's prior rulings in this case and the companion case against Johnson to the Eighth Circuit Court of Appeals.

## II. LEGAL ANALYSIS

As mentioned at the outset of this opinion, in her motion challenging the death penalty provisions of 21 U.S.C. § 848, Johnson makes essentially three arguments: (1) that the death penalty provisions of 21 U.S.C. § 848 unconstitutionally treat "aggravating factors," which permit imposition of the death penalty, as mere "sentencing factors," rather than as ele-

ments of capital offenses; (2) that the death penalty provisions of § 848 regarding the "penalty phase" violate her due process, confrontation, and cross-examination rights; and (3) that the government's attempts to overcome the unconstitutional aspects of the statute, by what Johnson contends are novel procedures, are not permissible. The court will consider each of these arguments in turn, although not necessarily in the order presented by the parties. However, before considering the parties' arguments, the court deems it appropriate to put those arguments in context by surveying the death penalty provisions of § 848.

### A. Death Penalty Provisions Of § 848

#### 1. Death eligible offenses and sentencing hearing

The provisions of § 848 pertinent to the court's analysis are, first, those that define offenses for which the death penalty may be imposed. Thus, in pertinent part, subsection (e) provides as follows:

(e) Death penalty

(1) In addition to the other penalties set forth in this section—

(A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death[.]

21 U.S.C. § 848(e)(1)(A); *see also* Superseding Indictment, Counts 1–10 (charging violations of § 848(e)(1)(A)). The statute then specifies that "[a] person shall be subjected to the penalty of death for any offense under this section only if a hearing is held in accordance with this section," 21 U.S.C. § 848(g), and, still more specifically, requires "a *separate* sentencing hearing to determine the punishment to be imposed" upon a defendant who "is found guilty of or pleads guilty to an offense under subsection (e) of this section." *Id.* at § 848(i) (also establishing requirements for the "sentencing hearing," as discussed in more detail *infra* ) (emphasis added). Thus, the statute contemplates a bifurcated proceeding, consisting of a "guilt" phase, to determine whether or not the defendant is guilty of the offense defined in § 848(e), and a "penalty" phase, to determine whether a defendant guilty of a § 848(e) offense—whether by jury determination or plea—should be subjected to the death penalty or some lesser sentence, pursuant to the remaining provisions of the statute.[2]

#### 2. Notice of intent to seek the death penalty

However, "a reasonable time before trial or acceptance by the court of a guilty plea," that is, before any sentencing hearing pursuant to § 848(g), the government must provide notice of its intent to seek the sentence of death in the event of conviction and that notice must also "se[t] forth the aggravating factors enumerated in subsection (n) of this section and any other aggravating factors which the Government will seek to prove as the basis for the death penalty." 21 U.S.C. § 848(h)(1)(A) & (B). The statute says

---

**2.** The statute also expressly provides that, "when a defendant is found guilty of or pleads guilty to an offense under subsection (e) of this section," Rule 32(c) of the Federal Rules of Criminal Procedure is inapplicable, and "no presentence report shall be prepared." *See* 21 U.S.C. § 848(j).

nothing about special requirements for *indicting* a death penalty offense defined by the statute. However, as shall become clearer below, the determination that the death penalty should be imposed cannot be based on any "aggravating factors"—statutory or non-statutory—about which the government has not given notice as required by § 848(h).

### 3. The separate sentencing hearing

Subsection (i) of the statute specifies, as follows, who must be the factfinder for the "separate sentencing hearing," which *follows* a jury determination of guilt or a guilty plea on the offense as defined in § 848(e):

(i) Hearing before court or jury

(1) When the attorney for the Government has filed a notice as required under subsection (h) of this section and the defendant is found guilty of or pleads guilty to an offense under subsection (e) of this section, the judge who presided at the trial or before whom the guilty plea was entered, or any other judge if the judge who presided at the trial or before whom the guilty plea was entered is unavailable, shall conduct a separate sentencing hearing to determine the punishment to be imposed. The hearing shall be conducted—

(A) before the jury which determined the defendant's guilt;

(B) before a jury impaneled for the purpose of the hearing if—

(i) the defendant was convicted upon a plea of guilty;

(ii) the defendant was convicted after a trial before the court sitting without a jury;

(iii) the jury which determined the defendant's guilt has been discharged for good cause; or

(iv) after initial imposition of a sentence under this section, redetermination of the sentence under this section is necessary; or

(C) before the court alone, upon the motion of the defendant and with the approval of the Government.

(2) A jury impaneled under paragraph (1)(B) shall consist of 12 members, unless, at any time before the conclusion of the hearing, the parties stipulate with the approval of the court that it shall consist of any number less than 12.

21 U.S.C. § 848(*i*). In short, the statute requires that, even where a defendant pleads guilty to the offense defined by § 848(e), pursuant to § 848(*i*), a *jury* must determine the defendant's eligibility for the death penalty in a "separate sentencing hearing," unless the parties agree that the sentencing hearing "shall be conducted . . . before the court alone."

In addition, the statute provides the following burdens and standards of proof for "aggravating" and "mitigating" factors at the penalty hearing:

The burden of establishing the existence of *any aggravating factor* is on the Government, and is not satisfied unless established *beyond a reasonable doubt.* The burden of establishing the existence of *any mitigating factor* is on the defendant, and is not satisfied unless established *by a preponderance of the evidence.*

21 U.S.C. § 848(j) (emphasis added). Another subsection of the statute provides that findings of aggravating factors must be unanimous and that the jury must "return special findings identifying any aggravating factors set forth in subsection (n) of this section, found to exist." 21 U.S.C. § 848(k). Thus, the statute expressly requires that, unless the parties agree otherwise, *the jury,* rather than the court, must

unanimously find that any aggravating factor has been established beyond a reasonable doubt and must also indicate "special findings" for each aggravating factor.

On the other hand, the standard for admissibility of evidence during the "separate sentencing hearing" differs from the standard applicable to the "guilt phase" of the proceedings. Specifically, the statute provides as follows:

> Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. *Any other information* relevant to such mitigating or aggravating factors *may be presented* by either the Government or the defendant, *regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.* The Government and the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any of the aggravating or mitigating factors and as to appropriateness in that case of imposing a sentence of death.

21 U.S.C. § 848(j) (emphasis added). In her challenge to the death penalty provisions of § 848, Johnson refers to this standard as a "relaxed evidentiary standard." In addition, the statute specifies the order of argument of the parties in the "separate sentencing hearing," granting the government the right "to open the argument," the defendant the opportunity "to reply," and the government a final opportunity "to reply in rebuttal." *Id.*

### 4. *Effect of aggravating factors*

Precisely how the aggravating factors affect the imposition of the death penalty is stated somewhat more obscurely in 21 U.S.C. § 841(k), which mandates "return of findings" of the sentencing hearing. *See* 21 U.S.C. § 848(k). Essentially, this subsection of the statute provides that the jury must find one of the aggravating factors set forth in subsection (n)(1) and at least one of the aggravating factors set forth in subsection (n)(2) through (n)(12), before the factfinder can consider any other non-statutory aggravating factor *that was also specified in the government's notice of intent to seek the death penalty.* Moreover, this subsection provides that the jury must find one of the aggravating factors set forth in subsection (n)(1) and at least one of the aggravating factors set forth in subsection (n)(2) through (n)(12), and must also conclude that the aggravating factors (statutory and non-statutory) found to exist outweigh any mitigating factor sufficiently to justify a sentence of death, before the factfinder can "recommend that a sentence of death shall be imposed." 21 U.S.C. § 848(k).[3]

---

3. In full, this subsection of the statute provides as follows:

> The jury, or if there is no jury, the court, shall consider all the information received during the hearing. It shall return special findings identifying any aggravating factors set forth in subsection (n) of this section, found to exist. If one of the aggravating factors set forth in subsection (n)(1) of this section and another of the aggravating factors set forth in paragraphs (2) through (12) of subsection (n) of this section is found to exist, a special finding identifying any other aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section, may be returned. A finding with respect to a mitigating factor may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may

Although the jury must be instructed that, "regardless of its findings with respect to aggravating and mitigating factors, [it] is never required to impose a death sentence," *see* 21 U.S.C. § 848(k),[4] the statute provides that, "[u]pon the recommendation that the sentence of death be imposed, the court shall sentence the defendant to death," unless certain exceptions specified in the statute, regarding age and capacity, are present. 21 U.S.C. § 848(*l*). Thus, the direct effect of jury determination that certain aggravating factors have been proved beyond a reasonable doubt, and that those factors outweigh any mitigating factors, is the imposition of the death penalty upon the defendant.

### 5. *Statutory mitigating and aggravating factors*

The "mitigating factors" applicable to the jury's consideration of whether the death penalty shall be imposed are specified in 21 U.S.C. § 848(m). Those factors are not of immediate concern here, however-

er, because the defendant is not required to give notice of the mitigating factors upon which she intends to rely at any time prior to the penalty phase of the proceedings. Perhaps of greater immediate interest here is the specification of "aggravating factors" in 21 U.S.C. § 848(n).

Section 848(n) provides that *only* the aggravating factors specified in this subsection shall be considered, "*unless* notice of additional aggravating factors is provided under subsection (h)(1)(B) of this section." *Id.* As noted above, § 848(k) requires that, on the road to recommending imposition of the death penalty, the jury must first find at least one of the aggravating factors in subsection (n)(1). Those factors are the following:

(1) The defendant—

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury which resulted in the death of the victim;

---

consider such a factor established for purposes of this subsection, regardless of the number of jurors who concur that the factor has been established. A finding with respect to any aggravating factor must be unanimous. If an aggravating factor set forth in subsection (n)(1) of this section is not found to exist or an aggravating factor set forth in subsection (n)(1) of this section is found to exist but no other aggravating factor set forth in subsection (n) of this section is found to exist, the court shall impose a sentence, other than death, authorized by law. If an aggravating factor set forth in subsection (n)(1) of this section and one or more of the other aggravating factors set forth in subsection (n) of this section are found to exist, the jury, or if there is no jury, the court, shall then consider whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death. Based upon this consideration, the jury by unani-

mous vote, or if there is no jury, the court, shall recommend that a sentence of death shall be imposed rather than a sentence of life imprisonment without possibility of release or some other lesser sentence. The jury or the court, regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed. 21 U.S.C. § 848(k).

4. The jury must also be instructed that, in its consideration of whether the sentence of death is justified, "it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or the victim, and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant, or the victim, may be," and each juror is also required to certify that it has followed these instructions. 21 U.S.C. § 848(*o*)(1).

(C) intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim;

(D) intentionally engaged in conduct which—

(i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and

(ii) resulted in the death of the victim.

21 U.S.C. § 848(n)(1). The "Findings" in the superseding indictment and Second Notice regarding the government's intent to seek the death penalty in this case both specify that the government intends to rely on aggravating factors identified in § 848(n)(1)(A), (B), and (C).

Before recommending the death penalty, the jury must *also* find at least one of the remaining statutory aggravating factors in 21 U.S.C. § 848(n)(2) through (12). *See* 21 U.S.C. § 848(k). The aggravating factors from this group that are pertinent here, in light of the "Findings" in the superseding indictment and the government's Second Notice Of Intent To Seek The Death Penalty in this case, are the following:

(8) The defendant committed the offense after substantial planning and premeditation.

(9) The victim was particularly vulnerable due to old age, youth, or infirmity.

\* \* \* \* \* \*

(12) The defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim.

21 U.S.C. § 848(n)(8), (9), and (12).

With the pertinent death penalty provisions in mind, the court turns to consideration of Johnson's various contentions that the statute is unconstitutional.

### B. Constitutionality Of § 848 Death Penalty Provisions

#### 1. Arguments of the parties

In a facial challenge to the constitutionality of the death penalty provisions of § 848, Johnson contends, first, that § 848 is unconstitutional in light of recent Supreme Court precedent, because it does not set forth "aggravating factors" necessary to establish her eligibility for the death penalty as "elements" of the capital offense, but instead treats such factors merely as "sentencing factors." In support of this argument, she contends that the Indictment Clause of the Fifth Amendment establishes that a criminal defendant has the right to consideration and charging of all of the elements of an offense in an indictment brought by a grand jury; thus, an indictment that fails to state all of the elements of an offense is fatally deficient. Next, she argues that, under *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), an "aggravating factor" is an element of a capital offense, because it increases the potential sentence for the offense from life imprisonment to death. Johnson contends that circuit and district court decisions holding that aggravating factors do not have to be pleaded in the indictment of a capital offense have been discredited in light of more recent Supreme Court precedent. Johnson then conducts a detailed analysis of § 848 to demonstrate that, as drafted by Congress, the "aggravating factors" identified are merely sentencing factors, not elements of

the capital offense, in light of the Supreme Court's methodology for determining whether Congress intended certain facts to be sentencing factors or elements. Thus, she contends that the implications of the plain language, legislative history, and structure of § 848, as well as procedural aspects of the statute, and "tradition and past congressional practice," all demonstrate that Congress intended "aggravating factors" under § 848 to be mere sentencing considerations. In conclusion to this part of her argument, Johnson argues that, because they treat "aggravating factors" merely as "sentencing factors," the death penalty provisions of § 848 are unconstitutional, and that such constitutional defects can only be remedied by legislative action.

In response, the government contends that Johnson cannot meet the "supremely high hurdle" to sustain a facial challenge to the constitutionality of § 848. Rather, the government contends that, if the statute can be *applied* in a constitutional manner, it withstands a *facial* constitutional challenge. The government contends that, instead of establishing that the death penalty provisions of § 848 are unconstitutional, *Ring* and *Apprendi* establish constitutional procedures for application of the death penalty. Under *Ring* and the other Supreme Court decisions cited by Johnson, the government contends that the death penalty provisions of § 848 are constitutional and that the superseding indictment eliminates any possible Fifth Amendment challenge to the death penalty in this case.

More specifically, the government contends that the death penalty provisions of § 848 comply with *Ring*, because the statute specifically requires that a jury find the "gateway" culpability and statutory aggravating factors to make the murder in question eligible for the death penalty, unless both the defendant and the govern-

ment waive a jury on those questions in favor of a determination by the court alone. Although the government acknowledges that *Ring* and *Apprendi* left unanswered the question of whether the Indictment Clause of the Fifth Amendment requires the grand jury to indict threshold mental culpability and statutory aggravating factors before a defendant may be eligible for the death penalty, that was because both cases involved state prosecutions to which the Indictment Clause was not directly applicable. On the other hand, the government acknowledges the possibility that *Ring* opens the door for the conclusion that, *in federal prosecutions,* the Indictment Clause may require submission to the grand jury of factors that make an offense eligible for the death penalty and also require statement of such factors in an indictment—conclusions that the government contends that the Court was not required to reach in *Ring,* which involved a state prosecution. Therefore, the government contends that it has, in an abundance of caution, done what the Indictment Clause would require by presenting in the indictment in this case grand jury "Findings" consistent with the demands of the Constitution. The government also contends that it is ultimately unnecessary to determine whether "aggravating factors" are or are not "elements" of offenses eligible for the death penalty under § 848, because the indictment here satisfies any possible requirements of the Indictment Clause, and the statute requires jury determination, beyond a reasonable doubt, of the aggravating factors for imposition of the death penalty. The absence of non-statutory aggravating factors from the indictment in this case, the government contends, is not fatal, because such factors only go to the selection of the appropriate penalty, not to Johnson's eligibility for the death penalty—which instead depends upon proof of

statutory, "gateway" aggravating factors—and such non-statutory aggravating factors therefore do not increase the punishment to which Johnson might be subjected.

### 2. Analysis

Running through all of Johnson's arguments in support of her motion is her contention that, pursuant to *Ring, Apprendi,* and other recent Supreme Court decisions, the "aggravating factors" that make imposition of the death penalty possible under § 848 *are elements* of a capital offense. From this reading of the Supreme Court's recent decisions, Johnson reaches the conclusion, among others, that § 848 is unconstitutional, because it does not treat aggravating factors as elements of a capital offense. However, the court believes that Johnson misreads the recent Supreme Court decisions upon which she relies, so that neither her basic premise nor the conclusions that she bases upon that basic premise can stand.

### a. Recent Supreme Court decisions

As viewed through the lens of the most recent Supreme Court case upon which Johnson relies, *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the oldest decision, *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), concluded that, where the federal carjacking statute, 18 U.S.C. § 2119, was susceptible of two constructions—one construction in which the statute defined one offense, then defined certain enhanced maximum penalties based on additional factual predicates, and another construction in which the statute defined several separate offenses distinguished by the factual predicates warranting enhanced maximum punishments—the court should "adop[t] the one that avoid[s] 'grave and doubtful constitutional questions,' " *i.e.,* the one that construes the statute as defining several separate offenses, thus avoiding possible Fifth Amendment deficiencies. *See Ring,* 536 U.S. at ——, 122 S.Ct. at 2438 (quoting *Jones,* 526 U.S. at 239, 119 S.Ct. 1215, in turn quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.,* 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)). The principle underlying this conclusion in *Jones,* according to *Ring,* was that, "the carjacking statute, if read to define a single crime, might violate the Constitution: '[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " *Id.* at ——, 122 S.Ct. at 2439 (quoting *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215). *Jones* thus suggested that the factual predicates warranting increased maximum penalties for an offense are actually "elements" of separate offenses, at least if the statute defining the offense is to be construed in a manner to avoid declaring it unconstitutional.

However, subsequently, in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), again as characterized in *Ring,* the Court concluded that the dispositive question " 'is one not of form, but of effect.' " *Id.* (quoting *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348). Therefore, the Court held in *Apprendi* that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Id.* (citing *Apprendi,* 530 U.S. at 482–483, 120 S.Ct. 2348). This was so, because "[a] defendant may not be 'expose[d] ... to a penalty *exceeding* the maximum he would

receive if punished according to the facts reflected in the jury verdict alone.'" *Id.* at 2439–40 (quoting *Apprendi*, 530 U.S. at 483, 120 S.Ct. 2348) (emphasis in the original). Thus, *Apprendi* stands for the proposition that any fact or circumstance that elevates the maximum penalty, whether defined as an "element" or merely as a "sentencing factor," is " 'the functional equivalent of an element of a greater offense.'" *Id.* at 2443 (quoting *Apprendi*, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). On the other hand, even in the wake of *Apprendi*, a distinction between elements and sentencing factors still has meaning where the facts or circumstances in question increase only the *minimum* sentence, as in that circumstance, only factual predicates properly characterized as "elements" must be proved to a jury. *Id.* at 2441 n. 5 (citing *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 2419, 153 L.Ed.2d 524 (2002)).

In *Ring* itself, relying primarily on *Apprendi*, the Court invalidated Arizona's death penalty statute, to the extent that it permitted a judge, rather than a jury, to find aggravating factors warranting imposition of the death penalty. The Court held that "[c]apital defendants, no less than non-capital defendants … are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 2432 & 2443. More specifically, the Court held that, "[b]ecause Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' *Apprendi*, 530 U.S. at 494, n. 19, 120 S.Ct. at 2348, the Sixth Amendment requires that they be found by a jury." *Id.* This was so, the Court reasoned, because "[i]n effect, 'the required finding [of an aggravated circumstance under Arizona's death penalty] expose[d] [Ring] to a greater punishment than that authorized by the jury's guilty

verdict.'" *Id.* at 2440 (quoting *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348). In so holding, the Court overruled *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." *Id.* at 2443.

Thus, *Ring* confirms, first, *Apprendi*'s treatment of aggravating factors that warrant imposition of a heightened penalty, such as the death penalty, as the "functional equivalents of elements" of the offense; second, that such factors are "functional equivalents of elements" *in the specific sense that they increase the maximum penalty for an offense, and so must be found by a jury beyond a reasonable doubt;* and, third, that the "form" in which such aggravating factors are stated in a statute defining an offense and punishment for that offense is of no moment, as a matter of constitutional law, to " 'who decides,' judge or jury." *See id.* at 2441 (citing *Apprendi*, 530 U.S. at 492, 120 S.Ct. 2348).

### b. Constitutionality of the factfinder provisions of § 848

■ The court agrees with the government that, in light of these precedents, the factfinder provisions of § 848 pass constitutional muster. It is plain that the aggravating factors defined in § 848(n) increase the maximum punishment to which a defendant convicted of an offense defined by § 848(e) could be subjected—that is, only if certain combinations of such aggravating factors are found, in addition to the elements of the offense as defined in § 848(e), is it possible to impose a death sentence instead of life imprisonment or some other, lesser sentence. *See* 21 U.S.C. § 848(k). As such, the aggravating factors are "functional equivalents of elements" of the of-

fense, in the sense explained in *Ring* and *Apprendi. See Ring,* 536 U.S. at ——, 122 S.Ct. at 2441; *Apprendi,* 530 U.S. at 492, 120 S.Ct. 2348. However, as *Ring* and *Apprendi,* also make clear, whether or not those factors are "elements" of a capital offense or merely "sentencing factors" is a distinction without a difference for determination of the proper factfinder. *Id.; Apprendi,* 530 U.S. at 492, 120 S.Ct. 2348.

The provisions of § 848 that permit imposition of the death penalty also require (1) that the *jury* find those aggravating factors, unless the parties agree to waive jury determination and, instead, to allow the court to consider the aggravating factors, *see* 21 U.S.C. § 848(i) (the penalty hearing must be before a jury, unless the parties agree that the court alone shall hear the penalty phase evidence); (2) that the jury must unanimously find those factors beyond a reasonable doubt, *see id.* at § 848(j) (requiring proof of aggravating factors beyond a reasonable doubt); and (3) that the jury must ultimately unanimously agree to recommend the sentence of death on the ground that the aggravating factors outweigh any mitigating factors. *Id.* at § 848(k) (requiring unanimous "special findings" by the jury on each aggravating factor, requiring the jury weigh aggravating factors against any mitigating factors, and requiring a unanimous vote of the jury to recommend the sentence of death). Thus, these provisions clearly comply with the constitutional requirements of *Jones,* Apprendi, and *Ring* regarding the factfinder and burden of proof for imposition of an increased penalty. *See Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215 (stating the governing principle to be that "[u]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment,

submitted to a jury, and proven beyond a reasonable doubt."); *Ring,* 536 U.S. at ——, 122 S.Ct. at 2439 (citing *Apprendi,* 530 U.S. at 482–83, 120 S.Ct. 2348, as holding that, "[I]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt."); *id.* 2443 (holding, in reliance on *Apprendi,* that the jury, not a judge, must find an aggravating circumstance necessary for the imposition of the death penalty). Nothing in *Ring* or *Apprendi* prohibits a procedure that provides that the necessary findings by a jury, beyond a reasonable doubt, of factors that increase the maximum penalty for an offense are to be made in a bifurcated proceeding, separated into "guilt" and "penalty" phases. Indeed, *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), upon which Johnson elsewhere relies, plainly suggests that such a bifurcated process is constitutional *so long as it is available to defendants who plead guilty as well as those who choose to exercise their right to have a jury determine guilt or innocence of the underlying offense,* which is precisely what § 848 does. *See Jackson,* 390 U.S. at 582, 88 S.Ct. 1209 ("The Congress can of course mitigate the severity of capital punishment. The goal of limiting the death penalty to cases in which a jury recommends it is an entirely legitimate one. But that goal can be achieved without penalizing those defendants who plead not guilty and demand a jury trial. In some States, for example, the choice between life imprisonment and capital punishment is left to a jury in every case—regardless of how the defendant's guilt has been determined.").

### c. *Constitutionality under the Indictment Clause*

■ However, Johnson argues that § 848 is nevertheless unconstitutional, be-

cause it violates the Indictment Clause of the Fifth Amendment. It is her contention that every factor that increases the maximum punishment for an offense is an "element" of the offense, and because every "element" must be stated in the indictment to satisfy the Indictment Clause, every factor increasing the maximum possible punishment must *also be treated as an element in the statute defining the offense* for the statute to comply with the Indictment Clause. However, the Supreme Court precedents considered above will not support either the first or the last link in Johnson's chain of reasoning.

The first flaw in Johnson's argument is, as indicated above, in her basic premise: Under *Ring* and *Apprendi*, "aggravating factors" are *not* "elements" of a distinct "capital" offense, but "the functional equivalents of elements" in the specific sense that they increase the maximum penalty for the offense, with the constitutional consequence that such factors must be found by a jury beyond a reasonable doubt. The second flaw in Johnson's argument is apparent on the face of the Indictment Clause itself. The Indictment Clause of the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger." U.S. CONST., AMEND V. On its face, therefore, the Indictment Clause is directed to *procedural requirements* before a defendant "shall be held to answer" for certain crimes—specifically, only upon "a presentment or indictment of a Grand Jury," with certain exceptions not at issue here. The Indictment Clause, however, says nothing on its face about how the "capital, or other infamous crime" must be *defined by statute*. Nevertheless, the court will consider, further, what implica-

tions recent precedents of the Supreme Court may have for the constitutionality of the death penalty provisions of § 848 under the Indictment Clause.

In *Apprendi,* the Court noted that the Fourteenth Amendment "has not ... been construed to include the Fifth Amendment right to presentment or indictment of a Grand Jury." *Apprendi,* 530 U.S. at 477 n. 3, 120 S.Ct. 2348. Therefore, this court, like the parties, must acknowledge that neither *Apprendi* nor *Ring* directly addressed any requirements of the Indictment Clause concerning statutory definition of elements of an offense, because both decisions involved state prosecutions. *See Ring,* 536 U.S. at ——, 122 S.Ct. at 2432–34 & 2437 n. 4 (considering the constitutionality of the Arizona death penalty statute and noting that the defendant "d[id] not contend that his indictment was constitutionally defective"); *Apprendi,* 530 U.S. at 469–70, 120 S.Ct. 2348 (considering the New Jersey statutes defining possession of a firearm as an offense and imposing a "hate crime enhancement"). The fact that both cases involved state prosecutions to which the Indictment Clause did not apply, however, does not mean that those decisions are irrelevant to consideration of Johnson's Indictment Clause argument, and indeed, the court finds that those decisions are contrary to Johnson's argument. Moreover, the court concludes that recent Supreme Court decisions involving *federal* prosecutions do not require the court to find the death penalty provisions of § 848 unconstitutional under the Indictment Clause.

Two of the recent Supreme Court decisions upon which the parties have relied *did* involve federal prosecutions. *Harris v. United States,* 536 U.S. ——, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), involved a federal prosecution under the statute criminalizing carrying a firearm in relation to a

drug-trafficking offense, 18 U.S.C. § 924(c)(1)(A). In that case, a majority of the Court agreed only on the unremarkable proposition that *Apprendi* did not render a statute unconstitutional where the statute only established certain increases in the mandatory *minimum* sentence for the offense based on proof of certain factual predicates, specifically, "brandishing" of the firearm. *Harris*, 536 U.S. at ——, 122 S.Ct. at 2420. Only a plurality of the Court embraced the portion of Justice Kennedy's opinion asserting that, "[r]ead together, *McMillan [v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986),] and *Apprendi* mean that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are the elements of the crime for the purposes of the constitutional analysis." *Id.* at 2419 (opinion by Justice Kennedy, joined by Chief Justice Rehnquist, and Justices O'Connor and Scalia). Thus, *Harris* does not stand for the propositions that facts that increase the maximum punishment for a crime are "elements" of the offense, or that those facts must be treated as "elements" in the statute defining the offense for the statute to comply with the Indictment Clause. Another recent Supreme Court decision, *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), also involved a prosecution under a federal statute, 21 U.S.C. § 846, which prohibits conspiracies to commit drug-trafficking offenses. However, *Cotton* also will not support the proposition Johnson asserts. Even though the Court held in *Cotton* that the failure of an indictment to charge the quantity of drugs allegedly involved in a conspiracy in violation of 21 U.S.C. § 846 was plain error in light of *Apprendi, see Cotton*, 535 U.S. at ——, 122 S.Ct. at 1785–86, the decision in *Cotton* simply never addressed the constitutionality of the *statute* that defines punishment for a drug-trafficking conspiracy on the basis of quantity of drugs, 21 U.S.C. § 841(b), in light of the requirements of the Indictment Clause.

The recent Supreme Court decision that is, perhaps, most instructive on Indictment Clause issues is *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In *Jones*, in order to avoid constitutional questions, the Court construed the federal carjacking statute as defining three separate offenses, differentiated by certain factual predicates, which the government had argued were merely "sentencing enhancements." *See Jones*, 526 U.S. at 251–52, 119 S.Ct. 1215. Those constitutional questions were embodied in the "principle" that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 243 n. 6, 119 S.Ct. 1215; *see also id.* at 242–43, 119 S.Ct. 1215. The court believes that it could likewise construe § 848 to avoid the same constitutional questions by construing the statute as defining separate offenses, one permitting only life imprisonment or some lesser penalty, and another permitting the death penalty on the basis of aggravating factors. Indeed, the court believes that, Johnson's extended analysis notwithstanding, the aggravating factors at issue in § 848(n) upon which the death penalty depends, like the "bodily injury" and "death" factors at issue in *Jones*, are as likely to be treated historically as elements, as they are to be treated merely as sentencing factors. However, the court will not rely on such an interpretation, except in the alternative.

Rather, this court relies, in the first instance, on the fact that, *Jones* will not stand for the proposition that any fact that

increases the maximum punishment for an offense must be stated as an *element* of the offense, or the statute defining the offense and punishment for it violates the Indictment Clause. Although *Jones* addressed notice requirements under the Fifth Amendment—but not specifically the Indictment Clause—the Court in *Jones* specifically stated that "[t]he constitutional safeguards that figure in our analysis concern *not the identity of the elements defining criminal liability but only the required procedures for finding the facts that determine the maximum permissible punishment;* these are the safeguards going to the formality of notice, the identity of the fact finder, and the burden of proof." *Id.* at 243 n. 6, 119 S.Ct. 1215; *see also id.* at 251 n. 11, 119 S.Ct. 1215 ("If the constitutional concern we have expressed should lead to a rule requiring jury determination of facts that raise a sentencing ceiling, that rule would in no way constrain legislative authority to identify the facts relevant to punishment or to establish fixed penalties. The constitutional guarantees that prompt our interpretation bear solely on the procedures by which the facts that raise the possible penalty are to be found, that is, what notice must be given, who must find the facts, and what burden must be satisfied to demonstrate them."). This conclusion echoes this court's reading of what the Indictment Clause, on its face, requires. In short, what *Jones* and the Indictment Clause require, when read together, is notice *by indictment* of facts that determine the maximum possible punishment for an offense, but neither imposes a requirement that Congress treat those facts as "elements" of the offense for the statute defining the offense to be constitutional.

Although they did not involve federal prosecutions, the lessons of *Apprendi* and *Ring* also cannot be ignored in the present context. As in *Apprendi,* § 848(e) defines an offense that "authorizes a maximum penalty of death only in a formal sense," because another statutory provision, § 848(k), requires the finding of aggravating factors before imposition of the death penalty. *See Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348; *see also Ring,* 536 U.S. at ——, 122 S.Ct. at 2440–41 (quoting this statement from *Apprendi* ). *Apprendi* stresses that, for purposes of answering the question " 'who decides,' judge or jury," *see Apprendi,* 530 U.S. at 492, 120 S.Ct. 2348, the dispositive question "is one not of form, but of effect," *i.e.,* the question was not whether some fact was or was not an "element" of the offense, but whether some fact was a "functional equivalent of an element," in that it *had the effect* of increasing the maximum punishment for an offense that was otherwise completely defined by the statute. *See Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348; *see also Ring,* 536 U.S. at ——, 122 S.Ct. at 2439 (quoting *Apprendi* ). It appears equally certain to this court that, for purposes of the question of what the Indictment Clause requires, the dispositive question "is one not of form, but of effect," and what the Indictment Clause requires is not that the statute define facts giving rise to increased maximum punishment as elements, but that such facts *be noticed in the indictment.* Reading *Apprendi*—and indeed, either *Jones* or the Indictment Clause—to require Congress to define any fact that increases the maximum possible punishment for an offense as an "element" of that offense would reduce Apprendi, *Jones,* or the Indictment Clause to "a 'meaningless and formalistic' rule of statutory drafting." *See Ring,* 536 U.S. at ——, 122 S.Ct. at 2440–41 (quoting *Apprendi,* 530 U.S. at 541, 120 S.Ct. 2348 (O'CONNOR, J., dissenting)). This the court declines to do.

Therefore, the court concludes that the death penalty provisions of 21 U.S.C.

§ 848 are not deficient under the Indictment Clause of the Fifth Amendment, even if the statute defines facts giving rise to increased punishment as "sentencing factors" rather than "elements." What the Indictment Clause and recent Supreme Court precedents require is not that the statute treat such factors as "elements," but that the defendant receive notice by indictment of such factors. *Cf. United States v. Sprofera*, 299 F.3d 725, 728 (8th Cir.2002) (joining a number of other circuits in holding that § 841(a) and § 846 are not unconstitutional on their face, simply because they prescribe no penalty absent a determination of drug quantity and type, because *Apprendi* makes clear who must be the factfinder on drug quantity and what the applicable burden of proof must be; the court adopted the conclusion that " '[h]ow statutes are drafted, or implemented, to fulfil [*Apprendi*'s] requirement is a subject to which the Constitution does not speak,' " quoting *United States v. Brough*, 243 F.3d 1078, 1079 (7th Cir.), *cert. denied*, 534 U.S. 889, 122 S.Ct. 203, 151 L.Ed.2d 144 (2001)). The government contends that the superseding indictment in this case does just that, but Johnson contends that such a "fix" is not permissible, a matter that the court takes up in the next section of its analysis.

### C. Challenge To The Government's "Fix"

#### 1. Arguments of the parties

■ Although it is the last of Johnson's arguments, the court will consider next her contention that the government's "fix" of the purported constitutional deficiencies of § 848's death penalty provisions is impermissible. Johnson contends that the government cannot simply cure the problem by reindicting her with "Findings" by the grand jury of statutory culpability and aggravating factors, because the grand jury simply is not authorized, under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, to make such "findings." This is so, she contends, because the "findings" do not charge *offenses* as required by Rule 7. She contends, further, that in this case, a reader of the indictment is left to guess the purpose and meaning of the "findings," for example, whether a capital crime is charged, whether there must be some additional notice of intent filed by the government before the crime charged becomes a "capital" crime, and whether a defendant who chose to plead guilty to the charge would also have to admit the "findings." Therefore, even with the "findings," Johnson contends that the superseding indictment does not provide sufficient notice that the crimes with which she is charged are "capital" crimes.

In response to Johnson's challenge to the government's "fix," the government contends that, even if not expressly authorized by any rule or statute, neither is the procedure it has employed—including in the Superseding Indictment "Findings" by the grand jury regarding statutory culpability and aggravating factors—*prohibited* by any rule or statute, including Rule 7 or § 848. Indeed, the government contends that the grand jury is a creature of common law with its own constitutional significance independent of positive law. On the other hand, the government contends that the court is obligated to read the indictment and statute to embody an acceptable, constitutional construction. The procedure applied here, the government argues, is no different from the procedure regarding drug quantity required in drug-trafficking cases in light of *Apprendi*. The government points out that similar efforts to declare the drug-trafficking statute, 21 U.S.C. § 841, unconstitutional on its face have failed. In short, the government contends that, far from requiring the extensive judicial "rewriting" that Johnson as-

serts is required for the death penalty provisions of § 848 to be constitutional, all that is required is an understanding that those provisions permit the grand jury to indict on death penalty eligibility factors, as has been done in this case.

### 2. Analysis

The court's analysis above of what recent Supreme Court precedents require necessarily shortens the court's analysis of Johnson's challenges to the government's "fix." The court finds no merit in the contention that the grand jury or an indictment cannot do precisely what *Jones, Ring,* and *Apprendi* would require: that any fact that increases the maximum penalty for an offense, whether or not it is an "element" of the offense as defined under the governing statutes, must be *charged in an indictment,* submitted to a jury, and proven beyond a reasonable doubt. Such a procedure, in the court's view, is plainly within the language and spirit of the Indictment Clause of the Fifth Amendment, as well.

Nor is the court persuaded by Johnson's "structural" arguments. The Grand Jury "Findings" of the aggravating factors making the offenses charged eligible for the death penalty explicitly cross-reference each of the counts to which they apply, thus establishing that these "functional equivalents of elements" must also be proved for each of the charges to carry the death penalty. *See* Superseding Indictment, "Findings." It is no more necessary for the superseding indictment to state, explicitly, that the maximum possible punishment, in light of proof of these aggravating factors, could be death, than it is for a post-*Apprendi* indictment of a drug-trafficking offense under 21 U.S.C. § 841(a) to specify that the quantity of drugs alleged would warrant the imposition of a life sentence, instead of some lesser sentence, un-

der 21 U.S.C. § 841(b). Nor is it necessary for the "Findings" to include a finding that the aggravating factors specifically alleged outweigh any mitigating factors, as it is only the aggravating factors, *if ultimately found by a jury beyond a reasonable doubt,* that will make the offense *eligible* for the death penalty, that is, the aggravating factors are those that would increase the maximum penalty for the offense to death; exculpatory or mitigating factors have *no* such effect, nor indeed, does proof that aggravating factors outweigh mitigating factors, as the balancing of such factors only warrants the ultimate jury *recommendation* of a death sentence.

The answers to Johnson's other asserted perplexities are apparent from § 848 itself and consideration of the statute in light of recent Supreme Court precedents. The court does not believe that there is any perplexity to the defendant over whether or not the § 848 offenses charged here are "capital" offenses, in light of the Grand Jury's allegation of aggravating factors; the notice of intent to seek the death penalty required from the government is not required to make the offenses eligible for the death penalty. This is so, because the Grand Jury's notice complies with the constitutional requirements embodied in *Jones, Apprendi, Ring,* and the Indictment Clause, and thus, provides full notice that the offenses charged are "capital" offenses. Moreover, what is required by those Supreme Court precedents is only the allegation in the indictment of factors that may increase the maximum penalty for the offense, *i.e.,* the *statutory* aggravating factors. The additional, non-statutory aggravating factors upon which the government may also rely to prove that aggravating factors outweigh mitigating factors must be stated in the government's notice, but *they do not establish the defendant's eligibility for a greater punishment;* instead, as the government argues, they go merely to penalty *selection.* On the other hand,

the notice from the government of intent to seek the death penalty—which must include both the statutory and any other, non-statutory aggravating factors upon which the government intends to rely, is a *statutory* requirement, pursuant to 21 U.S.C. § 848(h). Thus, the statute provides additional protections, not necessarily required by the Constitution, in that, as structured, the death penalty cannot ultimately be imposed upon the basis of aggravating factors, statutory or non-statutory, that were not stated in the notice from the government required by § 848(h). *See* 21 U.S.C. § 848(k) (return of findings for a recommendation of death).

The bifurcated structure of death penalty proceedings under the statute also makes clear to what a defendant charged with a § 848(e) offense must plead: The statute provides for a "separate sentencing hearing," in which determination of whether or not the death penalty is appropriate will be made by a jury, *even for a defendant who has pleaded guilty to a § 848(e) offense. See* 21 U.S.C. § 848(g) & (i). Plainly, then, a defendant must plead only to the elements of the *offense,* as defined by § 848(e), and a separate sentencing hearing must be conducted to determine whether the penalty imposed should be death, on the basis of the aggravating factors alleged in the indictment and noticed by the government, *even where the defendant pleads guilty. See* 21 U.S.C. § 848(g), (i), (j), & (k).

The court concludes that the government's "fix" in this case fully complies with constitutional requirements, as embodied in *Jones, Apprendi, Ring,* and the Indictment Clause, and is not otherwise contrary to law.

### D. Challenge To Penalty Phase Procedures

#### 1. Arguments of the parties

■ Johnson also argues that, even if the death penalty provisions of § 848 are otherwise constitutional, the "penalty phase" procedures in § 848(j) are not. More specifically, Johnson points out that the penalty phase procedures expressly state that information about mitigating and aggravating factors may be presented regardless of its admissibility under the rules governing admission of evidence at criminal trials, and that the admissibility of such information is instead limited only by a statutory standard permitting exclusion only if the probative value of the information is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. This use of a "relaxed evidentiary standard," Johnson contends, violates her Fifth Amendment due process rights and her Sixth Amendment rights of confrontation and cross-examination. She contends that this failing results, in part, from the fact that Congress did not envision the aggravating factors as elements of the capital offense, so that, at the time of drafting, Congress may have thought such procedures would provide more procedural protection than usual in sentencing procedures. However, such a justification cannot stand, she contends, in light of recent reformulation by the Supreme Court of aggravating factors as elements.

In response to Johnson's challenge to the penalty phase procedures of § 848, the government argues that Johnson's argument founders on her characterization of the death penalty eligibility factors as "elements" of the capital offenses. Even assuming that such factors must be stated in the indictment and proved beyond a reasonable doubt in light of *Ring* and related decisions, the indictment in this case and factfinder provisions of § 848(j) comply with those requirements. As to the "relaxed evidentiary standard," the government contends that application of such a

standard at the penalty phase has been upheld by the Supreme Court, for example, in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), as a matter within congressional power to prescribe rules of evidence and standards of proof, absent a countervailing constitutional constraint. No such constitutional constraints, in the form of the defendant's constitutional rights to confrontation and cross-examination, are present here, the government contends, because striking down the provision would require the court to disregard Supreme Court decisions, including *Williams v. People of New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), which upheld the admissibility of hearsay in capital murder trials, the need for more, not less, information for the factfinder at sentencing to determine whether or not the death penalty is appropriate, and suggesting that such a relaxed evidentiary standard may work to the defendant's advantage. The government also argues that the court could read § 848(j) as relaxing only the rules of evidence, not constitutional standards. Finally, the government argues that any unconstitutional parts of § 848(j) could be severed without invalidating the entire death penalty provision.

### 2. Analysis

The court's analysis of the last of Johnson's contentions is also considerably shortened by its conclusions, reiterated above, that "aggravating factors" under § 848 are not "elements," but "functional equivalents of elements" in a specific constitutional sense. It is also shortened by the conclusions, above, that the factfinder and burden-of-proof provisions of the "penalty phase" procedures under § 848 comply with the Constitution.

In support of her argument, Johnson relies almost exclusively on the conclusions

of the district court in *United States v. Fell*, 217 F.Supp.2d 469 (D.Vt.2002). However, Johnson's argument appears to be foreclosed by a recent decision of the Eighth Circuit Court of Appeals, *United States v. Allen*, 247 F.3d 741 (8th Cir. 2001), which considered essentially identical provisions of the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3593. In *Allen*, the court considered and rejected a similar argument, as follows:

Allen argues that because the FDPA allows the introduction during the sentencing phase of "information" rather than only "evidence," a jury's sentencing decision under the FDPA is inherently unreliable in violation of the Eighth Amendment. We reject this claim. The FDPA allows either party to introduce any "information" relevant to an aggravating or mitigating factor, regardless of its admissibility under the federal rules of evidence, but provides that the information "may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Thus, not only does the statute protect a defendant from both irrelevant information and overly prejudicial information, the relaxed evidentiary standard also works to a defendant's advantage in helping to prove mitigating factors and to disprove aggravating factors. Allen's reliance on *California v. Brown*, 479 U.S. 538, 542–43, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), which used the term "evidence" rather than "information" in its opinion, is misplaced because the distinction between evidence and information was not at issue. We therefore reject Allen's facial challenge to the FDPA's relaxed evidentiary standard during sentencing. *See Gregg [v. Georgia]*, 428 U.S. [153,] 204, 96 S.Ct. 2909, 49 L.Ed.2d 859 [ (1976) ] ("We think it desirable for the jury to

have as much information before it as possible when it makes the sentencing decision."); *[United States v.] Jones,* 132 F.3d [232,] 242 [ (5th Cir.1998) ] (holding that "the [FDPA's] relaxed evidentiary standard does not impair the reliability or relevance of information at capital sentencing hearings, but helps to accomplish the individualized sentencing required by the [C]onstitution").

*Allen,* 247 F.3d at 759–60. Although the decision in *Allen* has since been "vacated, and ... remanded to the United States Court of Appeals for the Eighth Circuit for further consideration in light of *Ring v. Arizona,* 536 U.S. ——, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)," *see Allen v. United States,* —— U.S. ——, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002) (mem.op.), it is not clear that the analysis of this issue in the circuit decision in *Allen* has been undermined. Moreover, although the decision in *Allen* addressed the contention on the basis of the Eighth Amendment, and Johnson here premises her argument on violation of her rights to due process, cross-examination, and confrontation under the Fifth and Sixth Amendments, the reasoning of *Allen* would appear to apply with equal force.

Moreover, it is not necessarily clear that the "relaxed evidentiary standard" here, which provides that *"information* relevant to such mitigating or aggravating factors *may be presented* by either the Government or the defendant, *regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,"* *see* 21 U.S.C. § 848(j) necessarily supplants constitutional standards found in the Fifth and Sixth Amendments, because it expressly supplants only *the rules of evidence,* not constitutional standards.

Moreover, the statute also provides that "the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any of the aggravating or mitigating factors and as to appropriateness in that case of imposing a sentence of death." *Id.* Thus, not only is the defendant given the opportunity to confront and rebut any "information" presented pursuant to the "relaxed evidentiary standard," but the court believes that it retains the authority under the statute to impose upon the parties any standards of admissibility *or fairness* dictated by the Fifth and Sixth Amendments. The court also believes that, in light of any remaining uncertainty, it is appropriate to leave the door open to reconsider the admissibility of any specific "information" under § 848(j) and constitutional standards at the time of the penalty phase hearing, should this case ever reach that point.

Therefore, the court also rejects this challenge to the death penalty provisions of § 848.

## III. CONCLUSION

For the reasons set forth above, Johnson's September 30, 2002, Motion to Declare the Death Penalty Provisions of 21 U.S.C. § 848 Unconstitutional and to Strike the Government's Notice of Intent to Seek the Death Penalty is **denied in its entirety.**

**IT IS SO ORDERED.**