**UNITED STATES of America,**
**Appellant,**

v.

**Donald FELL, Defendant–Appellee.**

**Docket No. 02–1638.**

United States Court of Appeals,
Second Circuit.

Argued April 8, 2003.

Decided March 2, 2004.

Feb. 3, 2004.

Robert J. Erickson, Deputy Chief, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C. (Peter W. Hall, United States Attorney for the District of Vermont, Burlington, VT, on the brief), for Appellant.

Alexander Bunin, Federal Public Defender, Albany, N.Y. (Gene V. Primomo, Assistant Federal Public Defender, Alba-ny, NY, Paul S. Volk, Blodgett, Watts & Volk, Burlington, VT, and Adam Thurschwell, of counsel, on the brief), for Defendant–Appellee.

Before: WALKER, Chief Judge, WINTER, Circuit Judge, and CARMAN, Judge.[1]

JOHN M. WALKER, Jr., Chief Judge.

At issue in this case is whether the Federal Death Penalty Act of 1994 (the "FDPA"), Pub.L. No. 103–322, Title VI, §§ 60002(a), 108 Stat.1959 (Sept. 13, 1994) (codified at 18 U.S.C. §§ 3591 *et seq.*), is unconstitutional because § 3593(c) of the FDPA permits the admission of evidence at the penalty phase of a capital trial that would not be admissible under the Federal Rules of Evidence ("FRE"). Under the FDPA, evidence may be excluded where "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). In a September 24, 2002 Opinion and Order, the United States District Court for the District of Vermont (William K. Sessions, III, *District Judge* ), held that this provision of the FDPA was unconstitutional on the ground that "the FDPA's § 3593(c)'s direction to ignore the rules of evidence when considering information relevant to death penalty eligibility is a violation of the Due Process Clause of the Fifth Amendment and the rights of confrontation and cross-examination guaranteed by the Sixth Amendment ['Constitutional Rights']." *United States v. Fell,* 217 F.Supp.2d 469, 473 (D.Vt.2002). We disagree.

While it is true that the FRE are inapplicable to death penalty sentencing proceedings under the FDPA, the FRE are

---

1. The Honorable Gregory W. Carman, Judge of the United States Court of International Trade, sitting by designation.

not constitutionally mandated. Indeed, the FRE are inapplicable in numerous contexts, including ordinary sentencing proceedings before a trial judge. See Fed. R.Evid. 1101(d).[2] Moreover, the FDPA does not alter a district court's inherent obligation to exclude evidence the admission of which would violate a defendant's Constitutional Rights. The admissibility standard set forth in § 3593(c) of the FDPA provides one means of complying with this responsibility. Accordingly, the judgment of the district court is vacated and the case is remanded for further proceedings.

## BACKGROUND

Donald Fell was indicted on four counts relating to the abduction and murder of Teresca King in late November 2000. Counts 1 and 2 charged Fell with carjacking and kidnapping. Because the charged crimes resulted in death, both counts were charged as capital crimes. On January 30, 2002, the government filed a Notice of Intent to Seek the Death Penalty, which set forth certain statutorily defined aggravating factors the government believed to be implicated in the case. In the summer of 2002, following the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the grand jury issued a superseding indictment that included a Notice of Special Findings reiterating the same aggravating factors noticed by the government six months earlier. In addition, the government issued a Supplemental Notice of Intent to Seek the Death Penalty, in which it identified several non-statutory aggrava-

ting factors it believed to also be applicable to the case, as permitted by the FDPA. See 18 U.S.C. § 3592(c) (permitting jury to consider any non-statutory aggravating factor for which notice was given); *United States v. Jones*, 132 F.3d 232, 239–40 (5th Cir.1998) (holding that government's authority to define non-statutory aggravating factors is not an unconstitutional delegation), *aff'd on other grounds*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

The defendant moved pre-trial to have the FDPA declared unconstitutional on numerous grounds. *See Fell*, 217 F.Supp.2d at 473–74 (listing claims). The district court addressed only two of them. It first held that nothing in the FDPA precluded the government from having the grand jury issue an indictment concerning the existence of aggravating factors. This ruling is not a subject of this appeal.

The district court next addressed the defendant's claim that the assertedly relaxed evidentiary standard applicable during the penalty phase of trial pursuant to § 3593(c) (the "FDPA Standard") renders unconstitutional any jury findings as to the existence of one or more of the aggravating factors necessary to impose a sentence of death. The defendant asserted that the FDPA Standard would permit the government to introduce statements made by the defendant's now-deceased co-defendant that inculpated the defendant with respect to one or more of these aggravating factors, but that these statements would not be admissible under the FRE. The district court agreed that the FDPA Standard was unconstitutional and struck

---

**2.** In fact, Judge Winter is of the view that, even in the absence of the express language of the FDPA, the FRE would be inapplicable to a capital penalty phase under Fed.R.Evid. 1101(d)(3), which states that the FRE are inapplicable to all sentencing proceedings, and 18 U.S.C. § 3661, which provides, "No

limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." The other panel members express no view on this point.

the grand jury's Notice of Special Findings from the indictment as well as the government's Supplemental Notice of Intent to Seek the Death Penalty. This appeal followed.

## DISCUSSION

### I. Appellate Jurisdiction

██ We have jurisdiction to entertain this interlocutory appeal pursuant to 18 U.S.C. § 3731,[3] which permits an immediate appeal of any district court decision that, *inter alia*, dismisses any part of a criminal indictment. *See United States v. Quinones*, 313 F.3d 49, 56–57 (2d Cir.2002) (holding that courts of appeals have "jurisdiction [under § 3731] to entertain appeals by the Government where a district court has stricken a death penalty notice" and collecting similar cases); *see also United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) (holding that § 3731 is to be construed broadly "to allow [government] appeals whenever the Constitution would permit").

### II. Ripeness

Although neither the district court nor any of the parties has addressed the question, as a threshold matter we must determine whether the defendant's challenge to the FDPA Standard is ripe for consideration, or whether, instead, the district court properly should have dismissed the claim as premature. *See United States v. Sampson*, 245 F.Supp.2d 327, 338–39 (D.Mass.2003) (discussing ripeness of constitutional challenge to FDPA Standard

when raised before trial); *see also Quinones*, 313 F.3d at 57–60 (discussing ripeness of different constitutional challenge to the FDPA).

██ "Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts. The Court, therefore, can raise the issue *sua sponte.*" *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir.1998) (internal citations omitted); *see also Quinones*, 313 F.3d at 57–58. At the core of the ripeness doctrine is the necessity of "ensur[ing] that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution" by "prevent[ing] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir.2002). Here, of course, the defendant has not been tried, let alone convicted; thus, he may never be subjected to a penalty phase in which the government has sought to introduce the challenged evidence.

In order to determine whether an issue is ripe for adjudication, a court must make a fact-specific evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In

---

**3.** Title 18 U.S.C. § 3731 provides:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall

lie where the double jeopardy clause of the United States Constitution prohibits further prosecution....

....

The provisions of this section shall be liberally construed to effectuate its purposes.

*Quinones,* a case also involving a pre-trial ruling that the FDPA was unconstitutional, we applied the *Abbott Laboratories* test, and, in words that apply equally to this appeal, held that

> due regard for the rights of criminal defendants compels the conclusion that ... the defendant['s] constitutional challenge to the FDPA was ripe for consideration by the District Court and is ripe for our review. First, the defendant['s] argument clearly was fit for adjudication. A challenge to the facial constitutionality of a criminal statute is a pure question of law [that] ... ["]is eminently fit for judicial review."
>
> ... [A] defendant suffers practical and legally cognizable disadvantages by postponing a facial challenge to the death penalty until after trial. Quite apart from a defendant's obvious desire to know in advance whether he will be risking his life by going to trial, ... a defendant may reasonably prefer the ordinary allocation of peremptory challenges—six for the government, ten for the defense—rather than the allocation in a capital case of twenty for each side.... [A] defendant may reasonably prefer a jury on which persons who are conscientiously opposed to the death penalty are not excused for cause.
>
> Further, if the death penalty remains a possibility during trial, a defendant may be forced into trial tactics that are designed to avoid the death penalty but that have the consequence of making conviction more likely. Moreover, the possibility of capital punishment frequently induces defendants to enter into plea agreements in order to guarantee their own survival. And the Supreme Court has specifically held that "a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty." Accordingly, to the extent that a defendant might be disposed to plead guilty before trial in order to avoid capital punishment, withholding consideration of a facial challenge to the death penalty until after trial, conviction and sentence could cause him substantial hardship.
>
> . . . .
>
> ... Because both of the factors for ripeness set forth by the Supreme Court in *Abbott Laboratories* were present when the District Court considered the constitutionality of the FDPA, the defendant['s] constitutional challenge to the FDPA was ripe for consideration by the District Court and is now ripe for our review.

*Quinones,* 313 F.3d at 59–60 (internal citations and footnote omitted).

*Quinones* addressed whether prosecution under the FDPA was unconstitutional, a claim that was raised by a defendant whose prosecution under the statute was certain and imminent. *See id.* at 52. Although we address a hypothetical evidentiary decision that may never be required, we nevertheless believe the reasoning of *Quinones* applies with comparable force here. Accordingly, we conclude that Fell's FDPA challenge is ripe for consideration.

### III. The Federal Death Penalty Act

Under the FDPA, if a defendant is convicted of a federal offense that carries the potential of a death sentence, the defendant is entitled to "a separate sentencing hearing to determine the punishment to be imposed." 18 U.S.C. § 3593(b). During this separate hearing, referred to as the sentencing or penalty phase, the jury first considers whether the government has sustained its burden of proving the existence of one or more statutorily defined aggravating factors beyond a reasonable doubt. *See* 18 U.S.C. § 3593(c). A finding that an aggravating factor exists must be

unanimous. 18 U.S.C. § 3593(d). If the jury finds that the government has not sustained its burden of demonstrating the existence of at least one statutory aggravating factor, the death penalty may not be imposed. *Id.*

If the jury finds that the government has sustained its burden in this regard, however, the jury must next

consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

18 U.S.C. § 3593(e). Unlike findings concerning aggravating factors, mitigating factors need be found only by one or more members of the jury and only by a preponderance of the evidence. *See* 18 U.S.C. §§ 3593(c), (d). "Based upon this consideration, the jury by unanimous vote ... shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." 18 U.S.C. § 3593(e).

Section 3593(c) of the FDPA sets forth the FDPA Standard, which is the evidentiary standard that applies only during the sentencing phase of a capital trial. It provides, in part:

Proof of mitigating and aggravating factors.-

. . . .

The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). *Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury....* The government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death.... The burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt. The burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless the existence of such a factor is established by a preponderance of the information.

18 U.S.C. § 3593(c) (emphasis added). It is this provision's exception of "the rules governing admission of evidence at criminal trials," namely, the FRE, that is the subject of this appeal. Fell argues that the admission of evidence that is not constrained by the FRE will render a jury's recommendation of a death sentence inherently unreliable.

### IV. The District Court's Decision

The district court held that the FDPA Standard is unconstitutional when viewed in light of the Supreme Court's decisions in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), because it denies a defendant the procedural safeguards guaranteed by the Due Process Clause of the Fifth Amendment and the confrontation

and cross-examination guarantees of the Sixth Amendment with respect to the penalty phase. *See Fell,* 217 F.Supp.2d 469, 485–90.

In *Ring,* the Supreme Court held that the aggravating factors necessary for imposition of the death penalty under Arizona's analogous state death penalty act were elements of a capital crime, such that they had to be submitted to a jury and proved beyond a reasonable doubt in conformity with the reasoning of *Apprendi. See Ring,* 536 U.S. at 609, 122 S.Ct. 2428. Unlike the Arizona death penalty statute, however, the FDPA does require the issue of aggravating factors to be submitted to a jury for determination beyond a reasonable doubt, which is all that was at issue with respect to *Ring*'s application of *Apprendi* to a death penalty statute. Moreover, following the *Ring* decision, the government in this case, in an exercise of caution, resubmitted the case to the grand jury to enable it to issue an indictment that included a notice of special findings in which it set forth specific aggravating factors it found to be applicable. Thus, here there is no dispute that there has been literal compliance with the mandates of *Ring* and *Apprendi.*

Nevertheless, the district court reasoned that in light of the trend in Supreme Court rulings concerning the Constitution's Indictment Clause, it was not enough to have the case comply with *Ring.* Rather, consideration had to be given to whether the Supreme Court's reasoning in these cases affects a defendant's rights during a capital sentencing phase with respect to the "full" or "entire panoply of criminal trial procedural rights." *Fell,* 217 F.Supp.2d at 477, 489 (internal quotation marks omitted).

Following this line of analysis, the district court found that the inapplicability of the FRE to capital penalty phases was inconsistent with the Supreme Court's repeated admonition that "heightened reliability" is required of cases that impose the death penalty. *Id.* at 476–77. Both the government and the district court appear to have agreed with defendant that the statements of his dead co-defendant would be inadmissible under the FRE but admissible at the penalty phase under the FDPA. *Fell,* 217 F.Supp.2d at 485. Yet admission of this evidence, according to the district court, would be wholly unreliable. *Id.* at 486.

The district court also noted that under the reasoning of *Apprendi,* former sentencing factors that are held to be elements of the crime, such as drug quantity, are thereafter to be submitted to the jury and found beyond a reasonable doubt. *Id.* at 488, 120 S.Ct. 2348. By necessary implication, the district court reasoned, such elements, which had formerly been found by a district court judge who was not bound by the FRE, *see* Fed.R.Evid. 1101(d)(3), were now to be found by a jury on the basis of evidence constrained by the FRE. *Fell,* 217 F.Supp.2d at 488. In light of this significant change in procedures, the district court concluded that it was inconceivable that Congress would have intended to single out elements of the death penalty as the only criminal elements to be found by a jury that was unconstrained by the FRE. *Id.*

The district court also held that no alternate construction of the FDPA was possible and, thus, that the constitutional question presented by the FDPA Standard could not be avoided, and further, that the FDPA Standard was not severable from the rest of the FDPA because it was an integral part of the statute and its omission would substantially alter it. *Id.* at 489 & n. 10. As a result, the district court concluded that "the FDPA, which bases a finding of eligibility for imposition of the

death penalty on information that is not subject to the Sixth Amendment's guarantees of confrontation and cross-examination, nor to rules of evidentiary admissibility guaranteed by the Due Process Clause to fact-finding involving offense elements, is unconstitutional." *Id.* at 489.

*V. Flaws with the District Court's Reasoning*

■ We fully agree with the district court that "heightened reliability" is essential to the process of imposing a death sentence. As the Supreme Court has repeatedly emphasized, "the Constitution places special constraints on the procedures used to convict an accused of a capital offense and sentence him to death. The finality of the death penalty requires a 'greater degree of reliability' when it is imposed." *Murray v. Giarratano*, 492 U.S. 1, 8–9, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (internal citations omitted); *see also Monge v. California*, 524 U.S. 721, 732, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (observing that there is an "acute need for reliability in capital sentencing proceedings"); *Simmons v. South Carolina*, 512 U.S. 154, 161–62, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994); *Lowenfield v. Phelps*, 484 U.S. 231, 238–39, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Beck v. Alabama*, 447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Gardner v. Florida*, 430 U.S. 349, 357, 362, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); and *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion) ("Because of th[e] qualitative difference [between a death sentence and life imprisonment], there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.").

■ What the district court failed to acknowledge, however, is that the Supreme Court has also made clear that in order to achieve such "heightened reliability," *more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors:

> We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at [a death penalty] hearing . . . . So long as the evidence introduced . . . at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision.

*Gregg v. Georgia*, 428 U.S. 153, 203–04, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (internal citations omitted). This statement in *Gregg* follows a long line of Supreme Court cases that have emphasized the importance of allowing the sentencing body to have full and complete information about the defendant. In *Williams v. New York*, for example, the Court stated that "modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

Facts relevant to sentencing are far more diffuse than matters relevant to guilt for a particular crime. Adjudications of guilt are deliberately cabined to focus on the particulars of the criminal conduct at issue and to avoid inquiries into tangential matters that may bear on the defendant's character. *See id.* By contrast, in determining the appropriate punishment, it is appropriate for the sentencing authority, whether jury or judge, to consider a defendant's whole life and personal make-up. *See id.* ("Highly relevant—if not essen-

tial—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."). The Supreme Court has stated that in "determin[ing] whether a defendant eligible for the death penalty should in .fact receive that sentence[, w]hat is important ... is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) (emphasis in original) (internal quotation marks omitted).

The FDPA Standard comports with the reasoning of *Williams* and its progeny by excluding only evidence whose probative value is outweighed by the danger of unfair prejudice to the defendant. This prescription permits the admission of evidence that might be excludable under the FRE but is nevertheless both constitutionally permissible and relevant to the determination of whether the death penalty should be imposed in a given case. This standard permits "the jury [to] have before it all possible relevant information about the individual defendant whose fate it must determine." *Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). As a result, the FDPA does not undermine "heightened reliability," it promotes it.

In concluding that the FDPA eliminates a defendant's constitutional rights to due process and to confront and cross-examine witnesses against him at the sentencing hearing, the district court mistakenly assumed that the FRE are the only means to safeguard these rights and to provide the "heightened reliability" necessary in imposing a sentence of death. In doing so, the district court effectively equated the FRE with a defendant's Constitutional Rights. *See Fell*, 217 F.Supp.2d at 489 ("Congress has explicitly and unambiguously provided that the [FRE] do not apply ..., and thus by necessary implication that a defendant does not have confrontation or cross-examination rights at a capital sentencing proceeding.").

The FRE, however, do not set forth the constitutional parameters of admissible evidence, nor does a criminal defendant have a constitutional right to have the FRE in place. Indeed, the FRE are inapplicable in several criminal proceedings, including sentencing proceedings before a judge. *See* Fed.R.Evid. 1101(d).[4] Moreover, the FRE generally afford broader protection than required by the Constitution by excluding evidence that would be constitutionally permissible. *See, e.g., Dowling v. United States*, 493 U.S. 342, 352–54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (holding that admission of evidence in violation of Fed.R.Evid. 404(b) did not violate defendant's right to due process); *Ryan v. Miller*, 303 F.3d 231, 247 (2d Cir.2002) ("[N]ot all assertions that hearsay rules prohibit will run afoul of the Confrontation Clause."). Conversely, some evidence that would be admissible under the FRE or other evidentiary rules would run afoul of constitutional principles. *See, e.g., Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d

---

4: Rule 1101 of the Federal Rules of Evidence is entitled "Applicability of Rules." Subsection (d) of the rule provides, in relevant part, **Rules inapplicable.** The rules (other than with respect to privileges) do not apply in the following situations:
    (1) **Preliminary Questions of fact**....
    (2) **Grand Jury**....

    (3) **Miscellaneous proceedings**.... [P]reliminary examinations in criminal cases; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

297 (1973) ("[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."); *cf. Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) ("Regardless of whether the proffered testimony comes within ... [Georgia's] hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause ...."). Thus the FRE establish neither the floor nor the ceiling of constitutionally permissible evidence.

■■■■ Instead, as the district court conceded, *Fell,* 217 F.Supp.2d at 489, Congress has the authority to set forth rules of evidence in federal trials subject only to the requirement that the rules comport with the Constitution, and it may "modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution." *Dickerson v. United States,* 530 U.S. 428, 437, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000); *see also United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998); *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). It was this authority that allowed Congress to promulgate the FRE in the first place, and it is this authority that permits Congress to forgo their application under the FDPA. So long as the FDPA Standard provides a level of protection that ensures that defendants receive a fundamentally fair trial, the act satisfies constitutional requirements. That requirement is certainly met, given that the balancing test set forth in the FDPA is, in fact, more stringent than its counterpart in the FRE, which allows the exclusion of relevant evidence "if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403 (emphasis added); Thus, the presumption of admissibility of relevant evidence is actually narrower under the FDPA than under the FRE.

■■■■ Moreover, as was true before the FRE were promulgated in 1972 and is true under the FRE, it remains for the court, in the exercise of its judgment and discretion, to ensure that unconstitutional evidence otherwise admissible under applicable evidentiary rules is excluded from trial. The FDPA does not eliminate this function of the judge as gatekeeper of constitutionally permissible evidence; nor does it alter or "eliminate the constitutional baseline for the admissibility of evidence in a criminal trial." *United States v. Matthews,* 246 F.Supp.2d 137, 144–45 (N.D.N.Y.2002). To the contrary, under the FDPA Standard, "judges continue their role as evidentiary gatekeepers and[, pursuant to the balancing test set forth in § 3593(c),] retain the discretion to exclude any type of unreliable or prejudicial evidence that might render a trial fundamentally unfair." *United States v. Battle,* 264 F.Supp.2d 1088, 1106 (N.D.Ga.2003); *see also United States v. Johnson,* 239 F.Supp.2d 924, 946 (N.D.Iowa 2003) (holding that the FDPA "expressly supplants only *the rules of evidence,* not constitutional standards .... [The trial court] retains the authority under the statute to impose upon the parties any standards of admissibility *or fairness* dictated by the Fifth and Sixth Amendments") (emphasis in original). In the instant case, then, if the district court were to conclude that admission of statements by Fell's deceased co-defendant would unfairly prejudice Fell, it would be obligated by the FDPA Standard to exclude them. We, of course, take no position on the question.

■■■■ In short, as the Fifth Circuit observed in *Jones,* the FDPA Standard "does not impair the reliability or relevance of

information at capital sentencing hearings." 132 F.3d at 242. Rather, it "helps to accomplish the individualized sentencing required by the constitution." *Id.* Accordingly, we agree with the numerous courts that have held that the FDPA Standard set forth in § 3593(c) meets constitutional requirements. *See, e.g., id.* at 241; *United States v. Haynes,* 269 F.Supp.2d 970, 983–87 (W.D.Tenn.2003); *Battle,* 264 F.Supp.2d at 1105–07; *United States v. Davis,* No. CR.A.01–282, 2003 WL 1837701, at *11 (E.D.La. April 9, 2003); *Johnson,* 239 F.Supp.2d at 944–46; *Matthews,* 246 F.Supp.2d at 141–46; *United States v. Regan,* 221 F.Supp.2d 672, 681–83 (E.D.Va. 2002); *United States v. Minerd,* 176 F.Supp.2d 424, 435–36 (W.D.Pa.2001); *United States v. Cooper,* 91 F.Supp.2d 90, 98 (D.D.C.2000); *United States v. Frank,* 8 F.Supp.2d 253, 267–71 (S.D.N.Y.1998); *United States v. Nguyen,* 928 F.Supp. 1525, 1546–47 (D.Kan.1996); *United States v. McVeigh,* 944 F.Supp. 1478, 1487 (D.Colo.1996).

### CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion. In particular, to avoid further piecemeal litigation, we instruct the district court to collectively dispose of all of the defendant's remaining pre-trial challenges.