**UNITED STATES of America**

v.

**Cuong Gia LE**

**No. CRIM. 1:03CR48.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 27, 2004.

See also 316 F.Supp.2d 343.

James Trump, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Frank Salvato, Alexandria, James Goodman Connell, III, Devine & Connell PLC, Fairfax, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

Defendant, Cuong Gia Le, in this capital murder prosecution challenges the Federal Death Penalty Act ("FDPA")[1] on a variety of constitutional grounds. In addition, he also mounts a constitutional challenge to various aggravating factors set forth in the government's Notice of Intent to Seek the Death Penalty ("Death Notice"). For the reasons that follow, these challenges fail; the FDPA passes constitutional muster, as do the various aggravating factors.

### I.

A history and summary of the allegations in this case may be found in previous memorandum opinions. *See United States v. Cuong Gia Le,* 311 F.Supp.2d 527, 528–31 (E.D.Va.2004) (detailed procedural history of the case with respect to defendant Le); *United States v. Cuong Gia Le, et al.,* 310 F.Supp.2d 763 (E.D.Va.2004) (description of all the indictments in this case up to the Fourth Superseding Indictment). It suffices here to note that Le stands charged with numerous racketeering-related and firearms offenses, including two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) and two counts of murder in the course of a firearms offense in violation of 18 U.S.C. § 924(j). These charges relate to a shooting at the Majestic Restaurant in Falls Church, Virginia on May 13, 2001 that resulted in the death of two individuals: Binh Anh Luu and Long Phi Nguyen.

There have been two death notices in this case. The original Death Notice set forth two statutory aggravating factors and one nonstatutory aggravating factor. The Amended Death Notice added four nonstatutory aggravating factors and under a category entitled "history of violence" identified nine violent incidents in which Le was allegedly involved, including a murder. Le's attack on the original Death Notice failed. *See United States v. Cuong Gia Le,* 311 F.Supp.2d. 527, 535 (E.D.Va.2004) (holding that government's original Death Notice was filed a reasonable time before Le's capital trial in accordance with 18 U.S.C. § 3593(a)) (interlocutory appeal pending). His attack on the Amended Death Notice, however, succeeded and, as a result, the Amended Death Notice was stricken. *See United States v. Cuong Gia Le,* 316 F.Supp.2d 343 (E.D.Va. 2004) (holding first that the government failed to make a showing of good cause to file the Amended Death Notice and second that the Amended Death Notice was not filed a reasonable time before trial, as required by 18 U.S.C. § 3593(a)).[2] At issue here, given that the Amended Death Notice has been stricken, are two motions: (i) Le's Motion to Strike Aggravating Factors Alleged in Government's Notice of Intent to Seek the Death Penalty; and (ii) Le's Motion to Dismiss or, in the Alternative, to Strike Aggravating Factors Alleged in, Government's Amended Notice of Intent to Seek the Death Penalty. The second motion, *inter alia,* reiterates the arguments made in the first motion and applies those arguments to the Amended Death Notice. Because the memorandum opinion striking the Amended Death Notice dealt with one of the arguments advanced in the second motion—that the government failed to show good cause to amend the original Death Notice—that argument will not be addressed again here. The remaining arguments made by Le in

---

**1.** 18 U.S.C. § 3591 *et seq.*

**2.** *See also United States v. Cuong Gia Le,* Criminal Action No. 1:03cr48 (E.D.Va. July 20, 2004) (Order denying government's motion for reconsideration).

the second motion relating to the constitutionality of the FDPA, now that the Amended Death Notice has been stricken, will be construed to apply to the original Death Notice. To the extent that any arguments in the second motion relate to aggravating factors alleged solely in the Amended Death Notice and not in the original Death Notice, those arguments are now moot and need not be addressed here.

## II.

■ Le challenges the constitutionality of the FDPA on six grounds, each of which will be addressed in turn. First, Le argues that the relaxed evidentiary standard for the capital sentencing phase proscribed by the FDPA violates his due process rights under the Fifth Amendment and his confrontation clause rights under the Sixth Amendment. The FDPA provides that during the sentencing phase of a capital trial, the defendant may present any information relevant to a mitigating factor, while the government may present any information relevant to an aggravating factor for which notice has been provided. *See* 18 U.S.C. § 3593(c). Significantly, during this phase of the proceedings,

> Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

*Id.* Thus, this statutory provision makes clear that the Federal Rules of Evidence do not govern the admissibility of evidence of aggravating and mitigating factors in a capital sentencing hearing. Given this, Le essentially argues that the admission of evidence during the sentencing phase that is not constrained by the Federal Rules of Evidence will necessarily render a jury's recommendation of a death sentence inher-

ently unreliable and hence constitutionally infirm.

To be sure, the Supreme Court has sensibly made clear that heightened reliability is required in capital cases. *See, e.g., Monge v. California,* 524 U.S. 721, 732, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (noting that there is an "acute need for reliability in capital sentencing proceedings"); *Murray v. Giarratano,* 492 U.S. 1, 8–9, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) ("The finality of the death penalty requires a 'greater degree of reliability' when it is imposed.") (internal citation omitted); *Lowenfield v. Phelps,* 484 U.S. 231, 238–39, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (stating that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed"). At the same time, however, "the Supreme Court has also made clear that, in order to achieve such 'heightened reliability,' *more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors." *United States v. Fell,* 360 F.3d 135, 143 (2d Cir.2004). Indeed, in *Gregg v. Georgia,* the Supreme Court noted that

> [T]he Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at [a death penalty] hearing.... So long as the evidence introduced ... at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when making the sentencing decision.

428 U.S. 153, 203–04, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (internal citations omitted). Maximizing the information about a defendant is important because in "determin[ing] whether a defendant eligible for the death penalty should in fact receive that sentence[, w]hat is important ... is an *individualized* determination on the basis

of the character of the individual and the circumstances of the crime." *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) (emphasis in original) (internal quotation marks omitted); *see also Fell,* 360 F.3d at 143 ("[I]n determining the appropriate punishment, it is appropriate for the sentencing authority, whether jury or judge, to consider a defendant's whole life and personal make-up."). Simply put, because capital sentencing demands an individualized determination on the basis of a defendant's character and the circumstances of the crime, this goal is more reliably accomplished through the admissibility of *more* information, not less, constrained only by the Constitution and the need to exclude any unfairly prejudicial information. In this respect, it is important to note, as the Second Circuit has, that "[f]acts relevant to sentencing are far more diffuse than matters relevant to guilt for a particular crime. Adjudications of guilt are deliberately cabined to focus on the particulars of the criminal conduct at issue and to avoid inquiries into tangential matters that may bear on the defendant's character." *Fell,* 360 F.3d at 143. By contrast, sentencing must be informed by the greatest amount of relevant information to ensure individualized punishment that is just and fitting in the circumstances.

■ The FDPA evidentiary standard, like the Georgia standard approved in *Gregg,* satisfies the Supreme Court's mandate for heightened reliability. Indeed, it excludes a greater amount of prejudicial information than the Federal Rules of Evidence by permitting the judge to exclude information where the "probative value is outweighed by the danger of creating unfair prejudice" rather than "substantially outweighed." *See* Rule 403, Fed.R.Evid. While it is true that the FDPA standard may permit the admission of evidence that might be excludable under the Federal Rules, it "is nevertheless both constitutionally permissible and relevant to the determination of whether the death penalty should be imposed in a given case.... [for the] standard permits 'the jury [to] have before it all possible relevant information about the individual defendant whose fate it must determine.'" *Fell,* 360 F.3d at 144 (quoting *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)).

■ Moreover, it is clear that Congress has the authority to prescribe rules of evidence in federal trials "subject only to the requirement that the rules comport with the Constitution, and it may 'modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution.'" *Fell,* 360 F.3d at 145 (quoting *Dickerson v. United States,* 530 U.S. 428, 437, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)). This authority allowed Congress to promulgate the Federal Rules of Evidence in the first instance and this same authority allows Congress to forgo. their application here. *Id.* Finally, "the FDPA does not eliminate [the] function of the judge as gatekeeper of constitutionally permissible evidence; nor does it alter or 'eliminate the constitutional baseline for the admissibility of evidence in a criminal trial.'" *Id.* (quoting *United States v. Matthews,* 246 F.Supp.2d 137, 144–45 (N.D.N.Y.2002)). Indeed, under the FDPA, "'judges continue their role as evidentiary gatekeepers and[,] pursuant to the balancing test set forth in § 3593(c), retain the discretion to exclude any type of unreliable or prejudicial evidence that might render a trial fundamentally unfair.'" *Id.* (quoting *United States v. Battle,* 264 F.Supp.2d 1088, 1106 (N.D.Ga. 2003)).[3]

In summary, as the Fifth Circuit correctly concluded, the relaxed evidentiary

---

**3.** *See also United States v. Johnson,* 239 F.Supp.2d 924, 946 (N.D.Iowa 2003) (holding

standard set forth in § 3593(c) "does not impair the reliability or relevance of information at capital sentencing hearings, but helps to accomplish the individualized sentencing required by the constitution." *United States v. Jones,* 132 F.3d 232, 241 (5th Cir.1998). Accordingly, it is appropriate to conclude here, consistent with the numerous federal courts that have addressed this issue, that the § 3593(c) standard does not violate the constitution.[4]

 Next, Le argues that the FDPA does not sufficiently narrow the class of persons eligible for the death penalty in violation of the Eighth Amendment. In this respect, the Supreme Court has held that, in order to pass constitutional muster, a capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens,* 462 U.S. 862, 876, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Put another way, there must be "a meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." *Furman v. Georgia,* 408 U.S. 238, 313, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The narrowing function may be accomplished in either of two ways: "[ (1) ] the legislature may itself narrow the definition of capital of-

fenses... so that the jury finding of guilt responds to this concern, or [ (2) ] the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase." *Lowenfield v. Phelps,* 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). Le argues (i) that the requirement that the jury find an element of intent as set forth in § 3591(a)(2)(A)-(D) fails to narrow the class of death-eligible defendants "because virtually every federal crime of murder satisfies one of these intents," and (ii) that the statutory aggravating factors provided in § 3591(c) "apply to virtually every federal homicide offense." These arguments fail to persuade.

After finding a defendant guilty of a capital offense, the jury may impose a death sentence only if it unanimously finds one of the mental states set forth in § 3591(a)(2) *and,* in addition, one of the statutory aggravating factors enumerated in § 3592(c). *See* 18 U.S.C. § 3593(e)(2). The intent element satisfies the rule limiting imposition of the death penalty to those who possess a sufficiently culpable mental state. *See Tison v. Arizona,* 481 U.S. 137, 157–58, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); *Enmund v. Florida,* 458 U.S. 782, 799, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Even assuming, *arguendo,* that the intent requirement does not itself perform a narrowing function,[5]

---

that the FDPA "expressly supplants only *the rules of evidence,* not constitutional standards.... [The trial court] retains the authority under the statute to impose upon the parties any standards of admissibility *or fairness* dictated by the Fifth and Sixth Amendments") (emphasis in original).

**4.** *See, e.g., Fell,* 360 F.3d at 146; *Jones,* 132 F.3d at 241; *United States v. Haynes,* 269 F.Supp.2d 970, 983–87 (W.D.Tenn.2003); *Battle,* 264 F.Supp.2d at 1105–07; *United States v. Davis,* 2003 WL 1837701, at *11 (E.D.La. Apr.9, 2003); *Johnson,* 239 F.Supp.2d at 944–46; *Matthews,* 246

F.Supp.2d at 141–46; *United States v. Regan,* 221 F.Supp.2d 672, 681–83 (E.D.Va.2002); *United States v. Minerd,* 176 F.Supp.2d 424, 435–36 (W.D.Pa.2001); *United States v. Cooper,* 91 F.Supp.2d 90, 98 (D.D.C.2000); *United States v. Frank,* 8 F.Supp.2d 253, 267–71 (S.D.N.Y.1998); *United States v. Nguyen,* 928 F.Supp. 1525, 1546–47 (D.Kan.1996); *United States v. McVeigh,* 944 F.Supp. 1478, 1487 (D.Colo.1996).

**5.** *But see Jones,* 132 F.3d at 248–49 (noting that the FDPA narrows the jury's discretion to impose the death penalty in federal homicide prosecutions by "requir[ing] the jury first to

the FDPA nonetheless accomplishes the constitutionally-mandated narrowing task by requiring that the jury find beyond a reasonable doubt the existence of at least one statutory aggravating factor. *See Zant,* 462 U.S. at 878, 103 S.Ct. 2733 ("Our cases indicate, then, that statutory aggravating circumstances play a constitutionally necessary function as the state of legislative definition: they circumscribe the class of persons eligible for the death penalty."). These FDPA aggravating factors provide objective criteria that cannot reasonably be interpreted to apply to all federal capital crimes. To the contrary, they apply to a narrow range of homicides and provide a principled basis for distinguishing between those homicides that warrant imposition of the death penalty from those that do not. *See United States v. Llera Plaza,* 179 F.Supp.2d 444, 451–52 (E.D.Pa. 2001); *Minerd,* 176 F.Supp.2d at 441. As a result, the FDPA constitutionally narrows the class of persons eligible for the death penalty.

■ Le next argues that the FDPA unconstitutionally provides that aggravating factors appear in a death notice rather than an indictment in violation of *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and that the Notice of Special Findings submitted to the grand jury by the government cannot save the constitutionality of the FDPA. This argument also fails.

In *Ring,* the Supreme Court held Arizona's death penalty statute unconstitutional because it provided that a judge alone, rather than a jury, could determine the existence of aggravating factors in violation of the Sixth Amendment right to trial by jury. 536 U.S. at 588, 122 S.Ct. 2428. More specifically, the Supreme Court found that "[c]apital defendant[s] ... are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* By its terms, the FDPA complies with *Ring* for it provides specifically for a jury to determine the existence of aggravating factors, unless both the defendant and the government agree otherwise. *See* 18 U.S.C. § 3593(b).

■■ *Ring* left open, however, whether the Indictment Clause of the Fifth Amendment [6] requires that a grand jury indict aggravating factors for a defendant to be eligible for the death penalty.[7] In light of the Supreme Court's ruling that aggravating factors "operate as the 'functional equivalent of an element of a greater offense,'"[8] thus requiring jury determination, the Fourth Circuit has determined that the Indictment Clause mandates submission of statutory aggravating factors to the grand jury. *See United States v. Higgs,* 353 F.3d 281, 298 (4th Cir.2003) ("[T]hose intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under

---

find that the defendant had the requisite intent"); *Minerd,* 176 F.Supp.2d at 441 (same); *United States v. Cooper,* 91 F.Supp.2d 90, 97 (D.D.C.2000) (same).

**6.** The Indictment Clause states that

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger ....

U.S. Const. amend. V.

**7.** The Fifth Amendment right to grand jury indictment does not extend to state prosecutions. *See generally Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). As a result, the Supreme Court in *Ring* did not raise the issue of indictment, and it was not specifically addressed. *See Ring,* 536 U.S. at 597 n. 4, 122 S.Ct. 2428 ("Ring does not contend that his indictment was constitutionally defective.").

**8.** *Ring,* 536 U.S. at 609, 122 S.Ct. 2428.

the FDPA are the functional equivalent of elements of the capital offenses and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt."). In this case, the government did precisely this: The list of statutory aggravating factors was submitted to the grand jury, which then returned a Notice of Special Findings. Yet, Le contends that because there is no provision in the FDPA for a Notice of Special Findings, the government cannot cure the constitutional Indictment Clause defect in the statute by simply inventing this Notice of Special Findings procedure out of whole cloth. While Le is correct that nothing in the FDPA requires prosecutors to charge aggravating factors in an indictment, he fails to note, as the Fifth Circuit correctly observed, that nothing in the FDPA prohibits such a procedure and thus "[t]he government can easily comply with both its constitutional obligations (by first going to the grand jury) and its statutory obligations (by later filing a § 3593(a) notice of intention to seek the death penalty)." *United States v. Robinson*, 367 F.3d 278, 290 (5th Cir.2004);[9] *cf. United States v.*

*McAllister*, 272 F.3d 228, 233 (4th Cir. 2001) (noting, while interpreting federal drug statute, that "the mere fact that the statute is silent regarding whether sentencing factors must be treated as elements [of the offense that must be alleged in the indictment and proven to the jury beyond a reasonable doubt] in order for those factors to increase the defendant's statutory maximum sentence does not make the statute inconsistent with the constitutional requirement that those factors receive that treatment."). Put another way, there is nothing in the FDPA that *forbids* a grand jury from making special findings concerning aggravating factors. As a result, the statute can be construed to allow the submission of aggravating factors to the grand jury. *See Rust v. Sullivan*, 500 U.S. 173, 191, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score."). As a result, the FDPA is neither facially unconstitutional[10] on this score nor unconstitutional as applied to Le in this case.

9. *See also United States v. Foster*, 2004 WL 225084 at *1 (D.Md. Jan.27, 2004) ("The FDPA's failure to require inclusion of the mens rea elements and aggravating factors in the indictment does not render the Act unconstitutional."); *United States v. Taylor*, 302 F.Supp.2d 901, 904 (N.D.Ind.2003) ("[T]he Court finds the Government has satisfied the requirement that any fact that is the functional equivalent of an element of the offense be charged in the indictment by presenting the Second Superseding Indictment which contains the ,statutory aggravating factors and mental culpability requirements."); *United States v. Mikos*, 2003 WL 22110948 at *5 (N.D.Ill. Sept.11, 2003) ("[T]he Court finds that the superseding indictment and the Notice of Special Findings filed by the government on November 14, 2002 satisfies the constitutional requirements of the Indictment Clause."); *United States v. Sampson*, 245 F.Supp.2d 327, 336 (D.Mass.2003) ("Recognizing a role for the grand jury in deciding whether a defendant shall be subject to the death penalty does not require a rewriting of

the Federal Death Penalty Act. The statutory roles of the Department of Justice, the judge, and the jury are not altered."); *United States v. Acosta–Martinez*, 265 F.Supp.2d 181, 185 (D.P.R.2003) ("[T]here is nothing in the FDPA or elsewhere that precludes the Government from alleging the aggravating factors in the indictment."); *United States v. Haynes*, 269 F.Supp.2d 970, 981 (W.D.Tenn.2003) ("[T]he Court rejects Defendant's contention that a grand jury has no authority to make 'special findings' concerning death-eligibility factors."); *Johnson*, 239 F.Supp.2d at 944; *United States v. Denis*, 246 F.Supp.2d 1250, 1255 (S.D.Fla.2002); *Regan*, 221 F.Supp.2d at 679–81; *Lentz*, 225 F.Supp.2d at 677–82; *United States v. Church*, 218 F.Supp.2d 813, 815 (W.D.Va.2002).

10. A facial challenge to a legislative act is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107

Next, Le contends that the FDPA is unconstitutional because it lacks proportionality review and gives the government the authority to create nonstatutory aggravating factors in an arbitrary fashion. This exact argument has already been squarely addressed and rejected by the Fourth Circuit and hence, it need not be addressed further here. *See Higgs*, 353 F.3d at 321 (rejecting argument that the FDPA violates the Eighth Amendment because it does not require proportionality review and allows for the use of nonstatutory aggravating factors).

■■■ Le next argues that § 3593(f)'s requirement that each juror certify that he did not consider "the race, color, religious beliefs, national origin, or sex of the defendant or any victim"[11] in reaching his sentencing decision is unconstitutional because it prohibits Le's expected mitigation evidence of race, national origin and culture, violating the principle that a trial court must admit and properly instruct the jury to consider all mitigating evidence. This argument misapprehends the purpose and function of § 3593(f). This provision in no way limits or excludes evidence of race, national origin, or culture when that evidence is an integral part of a mitigating or aggravating factor. But it is intended to prevent a jury from considering the race, color, religious beliefs, national origin, or sex of the defendant or any victim as mitigating or aggravating factors, in and of themselves.

■■■ It is clear that "[t]o meet constitutional requirements, a death penalty statute must not preclude consideration of *relevant* mitigating factors." *Lockett v. Ohio*, 438 U.S. 586, 608, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (emphasis added); *see also Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) ("[I]t is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing sentence."); *Eddings v. Oklahoma*, 455 U.S. 104, 114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ("[T]he sentencer [may not] refuse to consider, as a matter of law, any relevant mitigating evidence."). Contrary to Le's assertion, however, there is no conflict between this body of Supreme Court precedent and § 3593(f), properly construed. Section 3593(f) merely codifies the equal protection principle guaranteed to individuals against the federal government through the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 499–500, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Race, in and of itself, is as a matter of law "totally irrelevant to the sentencing process." *Zant*, 462 U.S. at 885, 103 S.Ct. 2733. Thus, while the FDPA does not permit the jury to consider a defendant's race *per se*, properly construed, it does permit the defendant to present all information relevant to sentencing, including information regarding the *effect* of race, national origin, and culture on the defendant.[12] As a result, § 3593(f) is not unconstitutional.

S.Ct. 2095, 95 L.Ed.2d 697 (1987). Indeed, "[t]he fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Id.*

**11.** 18 U.S.C. § 3593(f).

**12.** *See United States v. Webster*, 162 F.3d 308, 356 (5th Cir.1998) ("[A]lthough race *per se* is an irrelevant and inadmissible factor, the *effects* and *experiences* of race may be admissible."); *Llera Plaza*, 179 F.Supp.2d at 460 ("Although § 3593(f) prevents the sentencer from considering the defendant's race, it does not preclude consideration of the manner in which a defendant's race may have affected his or her life experiences and resultant personality."); *Minerd*, 176 F.Supp.2d at 434–35

Le's final argument regarding the constitutionality of the FDPA—that the death penalty *per se* constitutes cruel and unusual punishment—is precluded by binding Supreme Court precedent. *See McCleskey v. Kemp*, 481 U.S. 279, 300–03, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Gregg v. Georgia*, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) ("[T]he moral consensus concerning the death penalty and its social utility as a sanction, require us to conclude, in the absence of more convincing evidence, that the infliction of death as a punishment for murder is not without justification and thus is not unconstitutionally severe."); *Higgs*, 353 F.3d at 333 (noting that the argument that the death penalty is cruel and unusual punishment under all circumstances "is foreclosed by Supreme Court precedent").[18]

### III.

Le also moves to strike certain aggravating factors alleged in the original Death Notice. Specifically, the original Death Notice lists two statutory aggravating factors under 18 U.S.C. § 3592(c):

1. Grave Risk of Death to Additional Persons. The defendant, in the commission of the offense, or in escaping apprehension for the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense. Section 3592(c)(5).

2. Multiple Killings or Attempted Killings. The defendant intentionally killed or attempted to kill more than one person in a single criminal episode. Section 3592(c)(16).

The original Death Notice also includes one nonstatutory aggravating factor:

1. Contemporaneous Convictions. In addition to the capital offenses charged in the Indictment and the statutory and nonstatutory aggravating factors alleged in this Notice, the defendant has engaged in a continuing pattern of violent conduct and has threatened others with violence. The defendant may, at the conclusion to the guilt phase of his trial, be convicted of numerous crimes in addition to those capital charges described in this Notice. *United States v. Edelin*, 134 F.Supp.2d 59, 77 (D.D.C.2001). The defendant is charged in a total of twenty counts in the indictment, and of the sixteen non-capital crimes, all involve either crimes of violence or firearms charges relating to crimes of violence.

Le contends that statutory aggravating factor 1 ("SAF 1")—grave risk of death to additional persons—should be stricken for two reasons: (i) it is impermissibly vague, and (ii) it is impermissibly duplicative of statutory aggravating factor 2 ("SAF 2")—multiple killings or attempted killings.

 The Fourth Circuit has stated that "the controlling principle in analyzing aggravating factors for vagueness is to ensure that they do not infect the death sentence with bias or caprice." *United States v. Barnette*, 211 F.3d 803, 818 (4th Cir.2000). Additionally, the Supreme Court has made clear that "vagueness review is quite deferential" and "a factor is

---

("Section 3593(f) is denominated as a special precaution to ensure against discrimination.... It does not unconstitutionally restrict a defendant's ability to present mitigating evidence.").

**13.** The remainder of Le's arguments regarding the nonstatutory aggravating factors al-

leged in the Amended Death Notice advanced in his Motion to Dismiss, or in the Alternative, to Strike Aggravating Factors Alleged in, Government's Amended Notice of Intent to Seek the Death Penalty are moot, given that the Amended Death Notice has been stricken on other grounds. *See United States v. Cuong Gia Le*, 316 F.Supp.2d 343 (E.D.Va.2004).

not unconstitutional if it has some 'common-sense core of meaning ... that criminal juries should be capable of understanding.'" *Tuilaepa v. California,* 512 U.S. 967, 973, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). In *Barnette,* the Fourth Circuit had occasion to assess the constitutionality of the same aggravating factor at issue here—grave risk of death to additional persons. There, the Fourth Circuit noted that "[w]hile a plurality of the Supreme Court has acknowledged that this aggravating factor may be unconstitutionally vague, depending on the facts, *Gregg v. Georgia,* 428 U.S. 153, 202, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), when the Court evaluated these factors, it looked to the underlying Georgia courts' interpretations of the factors and found that they were not vague as applied." *Barnette,* 211 F.3d at 819. Because in *Barnette* "[t]he district court clarified the meaning of grave risk of death in the jury instructions, defining it as 'a significant and considerable possibility' and as placing other persons in a 'zone of danger,'" the Fourth Circuit held "that the instruction was not overly broad and provided a common sense core of understanding to the factor that the jurors could understand." *Id.; accord United States v. McVeigh,* 944 F.Supp. 1478, 1488 (D.Colo. 1996) ("In considering this issue at this time, it must be recognized that the notices will be given to the jury with additional instructions to assist in further narrowing and defining the terms used and the concepts communicated."). As a result, it is clear that similar jury instructions in this case can likewise ensure that SAF 1 is not unconstitutionally vague as applied here.

Moreover, SAF 1 has a clear meaning that a jury would be able to understand in the factual context of this case. Specifically, the government alleges that the shooting at the Majestic Restaurant was committed in the presence of a large crowd in a public place. Thus, the government intends to show that, in these circumstances, Le's acts plainly created the risk that more than a single victim (or the intended targets) would be at risk of death.[14] As a result, SAF 1 is not impermissibly vague in this context.

■ Le's second argument—that SAF 1 unconstitutionally skews the jury's weighing process because it duplicates SAF 2—is also unpersuasive. While it is true that these two factors are based on the same criminal episode, the factors are not duplicative because SAF 1 addresses the grave risk of death to one or more persons *in addition to the victims of the offense,* while SAF 2 relates to the number of actual *victims* of the offense. Thus, SAF 2 is alleged in connection to the four gang members and/or associates Le allegedly shot, two of whom were killed and two of whom were wounded. SAF 1, on the other hand, is alleged in relation to the other bystanders who were not shot, but were nearby and within the zone of danger created by Le's shooting. *See United States v. Bin Laden,* 126 F.Supp.2d 290, 300 (S.D.N.Y.2001) (concluding that "grave risk of death to additional person" aggravator and "multiple killings/attempted killings" aggravator are distinct because "[t]he first relates to Defendants' mental state with respect to persons who were not the intended victims of the bombings"

14. *See United States v. Tipton,* 90 F.3d 861, 895 (4th Cir.1996) ("[C]ontext, including clarifying jury instructions, may supply the needed 'common sense core of meaning ... that criminal juries should be capable of understanding.'"); *accord McVeigh,* 944 F.Supp. at 1490 ("Read in the context of the factual allegations of the indictment, there is no problem here. The government intends to prove that the truck bomb was of such force as to create a risk to persons who were not physically affected by the explosion. The issue is one of scope and a clarifying instruction may validate this factor.").

while "[t]he second focuses on Defendants' particular desire that there be multiple victims, rather than just one—i.e., the sheer magnitude of the crime.").

■ Le also challenges the nonstatutory aggravating factor on various bases. First, Le argues that the language of § 3591(a) contradicts the language of § 3592(c) because, while § 3592(c) authorizes the use of nonstatutory aggravating factors, § 3591(a) provides that the jury may only consider the factors specifically "set forth" in § 3592(c) and only statutory aggravating factors are set forth, i.e., listed, in § 3592(c). This argument rests on a "strained and hyper-literal reading of § 3591(a)." *United States v. Nguyen,* 928 F.Supp. 1525, 1536 (D.Kan.1996) (finding "no merit" in this precise argument).

■ The FDPA unequivocally provides for the use of nonstatutory aggravating factors. *See* 18 U.S.C. § 3592(c) ("The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists."). And, a basic canon of statutory interpretation is that a statute should be construed, if possible, in a manner that allows all of its provisions to be given effect, so that no part of the statute is rendered inoperative or superfluous. *See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 214–16, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (noting that effect must be given, if possible, to every word, clause, and sentence of a statute). Yet, Le's hyper-technical reading of the FDPA would effectively render that portion of § 3592(c) allowing for the use of nonstatutory aggravating factors wholly inoperative. Thus, a better, more sensible reading of § 3592(c) is that any nonstatutory aggravating factors for which notice has been given are considered to be effectively set forth in § 3591(a). Put another way, Le's argument in this respect is logically infirm. By definition, nonstatutory aggravating fac-

tors cannot be listed in the statute; if they were, they would necessarily become statutory aggravating factors and Congress made clear through the FDPA that it did not wish to limit the jury's consideration to the aggravating factors listed in the statute. Congress thus realized that the specific circumstances of a case, as here, may give rise to other relevant aggravating factors that it could not envision *ex ante*.

■ Le also contends that the nonstatutory aggravating factor is unconstitutionally vague. As discussed earlier with respect to the statutory aggravating factors, "a factor is not unconstitutional if it has some 'common-sense core of meaning ... that criminal juries should be capable of understanding.' " *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630. Moreover, jury instructions may be given to clarify the meaning of a potentially vague aggravating factor. *See Barnette,* 211 F.3d at 819. In this case, jury instructions may be given to alleviate each of Le's concerns. The jury may be instructed that the nonstatutory aggravating factor relates solely to conduct underlying Le's contemporaneous convictions during the guilt phase of trial and the existence of those contemporaneous convictions, and further, that Le will be separately punished for those alleged crimes under the Federal Sentencing Guidelines.

■ Finally, Le's argument that nonstatutory aggravating factors must be alleged in the indictment has already been rejected by the Fourth Circuit in *Higgs.* There, the Fourth Circuit held that the Indictment Clause does not require that nonstatutory aggravating factors be included in the indictment because "the finding of a nonstatutory aggravating factor alone will not support imposition of the death penalty. Rather, the purpose of nonstatutory aggravators is to aid the factfinder in selecting the appropriate sen-

tence from the available options, *i.e.*, death or life imprisonment." *Higgs*, 353 F.3d at 298. Therefore, "[b]ecause nonstatutory aggravating factors do not increase the available punishment to which a defendant might be subjected, they are not required to be alleged in the indictment." *Id.* at 299.

## IV.

Accordingly, for all the reasons stated herein, Le's Motion to Strike Aggravating Factors Alleged in Government's Notice of Intent to Seek the Death Penalty and his Motion to Dismiss or, in the Alternative, to Strike Aggravating Factors Alleged in, Government's Amended Notice of Intent to Seek the Death Penalty [15] must be denied.

An appropriate order will issue.

**15.** As previously discussed, the applicable arguments in this motion have been construed to apply to the original Death Notice. Having been stricken, the Amended Death Notice is not addressed in this memorandum opinion.